DICKSON v. OMAHA & ST. LOUIS RAILROAD COMPANY, *Appellant.*

Division One, July 9, 1894.

1. **Railroad:** NEGLIGENCE: DEFECTIVE FENCE: INJURY TO EMPLOYEE. A railroad company is liable for the death of its locomotive engineer caused by the collision of the train with a bull which had come on its track through a defect in the company's right of way fence.

2. ———: ———: ———: ———: PROXIMATE CAUSE. The defective fence is, in such case, the proximate cause of the accident, though the train was running at a greater rate of speed than that permitted by the rules of the company.

3. **Negligence:** SUDDEN DANGER: CHOICE OF EXPEDIENTS. One is not chargeable with negligence because, when exposed to sudden danger, he does not adopt the safest and best course to avoid injury.

4. Railroad: NEGLIGENCE: INJURY TO EMPLOYEE: DEFECTIVE FENCE: INSTRUCTION. In an action against a railroad company for the death of its engineer, through collision with a bull which entered on the track through a defect in the fence, an instruction is erroneous which is susceptible of meaning that the engineer was under the same obligation as the company to inspect and ascertain the defective condition of the fence.

*Appeal from Daviess Circuit Court.*—HON. C. H. S. GOODMAN, Judge.

AFFIRMED.

*Theodore Sheldon* and *E. E. Aleshire* for appellant.

(1) The petition does not state a cause of action and the court erred in overruling defendant's objection to the introduction of any evidence by the plaintiff, because, as against its employees, defendant was under no duty to fence its road. R. S., sec. 2611; Rorer on Railroads, ch. 25, sec. 1; 1 Thompson on Negligence, 517; 2 Shearman & Redfield on Neg. [4 Ed.], sec. 447; Redfield on Railways, ch. 19, sec. 12; Pierce on Railroads, 409; *Langlois v. Railroad,* 19 Barb, 364; *Railroad v. Brown,* 5 Brad. (Ill.) 590; *Dewey v. Railroad,* 31 Iowa, 374; *Patton v. Railroad,* 73 Iowa, 306; *Carpenter v. Railroad,* 25 Mo. App. 111; *Berry v. Railroad,* 65 Mo. 172; *Harrington v. Railroad,* 71 Mo. 384; *Johnson v. Railroad,* 80 Mo. 620; *Peddicord v. Railroad,* 85 Mo. 160; *Donnegan v. Erhardt,* 119 N. Y. 428. (2) The failure to fence and the collision with the bull were the remote and not the direct causes of Dickson's death. Its direct and immediate cause was his approaching the switch without having his train under control. Beach on Contributory Neg. [2 Ed.], sec. 373; *Francis v. Railroad,* 110 Mo. 387. (3) Dickson's own negligence, in not observing the switch but remaining upon the steam chest of the engine until the switch was

reached, prevents recovery. (4) The court erred in instructions given for plaintiff, and in modifying and refusing instructions asked by defendant. See above cited authorities; *McKee v. Railroad*, 83 Iowa, 616; *Huhn v. Railroad*, 92 Mo. 440; *Alcorn v. Railroad*, 108 Mo. 81.

*Alexander H. Waller* for respondent.

(1) *First.* Plaintiff's petition states a good cause of action. The Missouri statute is mandatory and enjoins upon railroad companies the positive duty of fencing their tracks with lawful fences and maintaining the same and was designed for the protection of persons, including employees operating trains, as as well as animals. R. S. 1889, sec. 2611; *Isabel v. Railroad*, 60 Mo. 484; *Donnegan v. Erhardt*, 119 N. Y. 472; *Magee v. Railroad*, 78 Cal. 432; *Blair v. Railroad*, 20 Wis. 257; *Stuettgen v. Railroad*, 80 Wis. 499; *Keyser v. Railroad*, 56 Mich. 559; s. c., 66 Mich. 361; *Sherman's Adm'r v. Anderson*, 27 Kan. 333; *Fordyce v. Jackson*, 56 Ark. 597; *Walkenhauer v. Railroad*, 17 Fed. Rep. 136. *Second.* Any failure or neglect to comply with the positive requirements of any statute or municipal regulation enacted for the purpose of protecting life and limb is negligence *per se. Schlereth v. Railroad*, 96 Mo. 515; *Eswin v. Railroad*, 96 Mo. 294; *Crumpley v. Railroad*, 98 Mo. 38; Wood's law of Master and Servant, sec. 397, p. 789. (2) The immediate cause of Dickson's death was the wreck of his engine at the switch. The promoting cause in the chain of causation, leading directly and proximately to the wreck and Dickson's death, was defendant's negligence with respect to its fence which permitted the bull to get onto and obstruct track and derail the engine. What followed were but the consequences of this negligent act,

flowing naturally and directly therefrom. Beach on Cont. Neg. [1 Ed.], pp. 32, 33. (3) *First*. There was no proof of negligence on Dickson's part. This question was submitted to, and decided by, the jury, however, against appellant. *Barry v. Railroad*, 98 Mo. 70; *Wilkins v. Railroad*, 101 Mo. 106. *Second*. When a person finds himself suddenly exposed to great danger and does what he thinks best for his safety, he is not guilty of negligence, though he may not have acted wisely. *Hass v. Railroad*, 57 N. W. Rep. (Iowa) 896; *Adams v. Railroad*, 74 Mo. 560; *Siegrist v. Arnot*, 86 Mo. 208. (4) The court did not err in refusing appellant's ninth instruction for the reason: *First*. The substance of this instruction is that if the defect in the fence "was known to Dickson as well as to the company there can be no recovery in the case, unless, etc. This is not the law. The master and servant in cases like this do not stand on equal footing, and not only must the servant have knowledge of the defect, but of the danger also. *Waldhier v. Railroad*, 87 Mo. 46; *Magee v. Railroad*, 78 Cal. 432. *Second*. There were no evidence direct or circumstantial tending to show that Dickson had any knowledge whatever of the defect in the fence or the danger arising therefrom. Instructions must be predicated on the evidence. *Rodney v. McLaughlin*, 97 Mo. 431; *Stone v. Hunt*, 114 Mo. 74; *Bean v. Railroad*, 107 N. C. 745. *Third*. The evidence showed that Dickson had been running over that part of appellant's road several months, averaging a round trip every ten days. There was no other testimony whatever from which the jury might infer notice on his part of the defect in the fence. From the face of the entire record the verdict was for the right party, and, had the instruction in question been given, the verdict could not have been different. Hence appellant was not prejudiced by the court's action. *Fortune v. Fife*, 105 Mo. 433; *Hanni-*

*ford v. City of Kansas*, 103 Mo. 182; *Fitzgerald v. Barker*, 96 Mo. 661.

MACFARLANE, J.—This action is brought by Lena Dickson, widow of James Dickson, deceased, against the Omaha and St. Louis Railway Company, to recover the sum of $5,000, for alleged negligence of the railway company, resulting in the death of Dickson, near Evona, Missouri, on May 16, 1891.

The petition avers that on that day deceased was in the employ of defendant as locomotive engineer and was operating one of its locomotives attached to a freight train. While so operating said engine a collision occurred with a bull, which had strayed upon the track through a defective fence, by reason of which collision the engine was thrown from the track and overturned, thereby killing Dickson; that the bull got upon the track and the accident occurred at a point where the law required the defendant to erect and maintain the fence; that defendant was negligent in that, although it was required by law to maintain said fence, it failed to do so, and by reason of said negligence plaintiff's husband was killed and she prayed damages as above.

To the petition the defendant entered a general denial, which it supplemented with the allegations that if the fence was defective Dickson knew of such defect; that at the time of the accident Dickson was violating the rules of the company in running his engine at a high, forbidden and dangerous speed; that the injury was not due to the collision with the bull, but was caused by striking a three-throw switch at great distance from the point where the collision occurred, and that, after the collision with the bull, Dickson might have avoided all injury by the exercise of ordinary care.

The testimony offered tended to show that on the

morning of May 16, 1891, Dickson, then operating one of defendant's trains as engineer, was approaching the station Evona, going east. When the engine was about nine hundred and fifty feet west of the west switch, and moving at from fifteen to twenty miles an hour, it collided with a bull which had strayed upon the track through a defect in the railroad fence along the right of way. The bull was carried on the cow-catcher about one hundred feet and then rolled on the track in front of the engine. The only effect of the collision was to derail the front pair of small wheels under the engine. These kept on the ties close to the rails. All the rest of the train kept the track for eight hundred and fifty feet and until the west switch was reached. After colliding with the animal, Dickson reversed his engine and applied an air brake, with which the engine was fitted. He then climbed through the window of his cab out onto the running board of the engine, and, after walking its length, stepped down upon the steam chest and there stood until the west switch was reached. The engine, when it reached this switch, was running about twelve miles an hour. Upon striking the switch, with its front small wheels derailed, the engine was thrown over, and Dickson, who was then standing upon the steam chest, was also thrown to the ground and crushed to death by some part of the engine or tender. The fireman jumped off within sixty or seventy feet from the place where the bull was struck. When last seen, Dickson was leaning over watching the derailed wheel under him, which was moving over the ties. After the application of the air brake on the engine, the train began to slow up, until its speed at the switch was reduced to about twelve miles an hour.

One of the rules of defendant was as follows:

VOL. 124—10

"Freight trains must be under control when approaching and passing through the stations, and be prepared to stop in case the track is obstructed."

At the conclusion of the testimony, defendant unsuccessfully demurred to the evidence.

Any other necessary facts will sufficiently appear in the opinion. The case was submitted to the jury upon instructions given by the court, which need not be set out here. Some instructions asked by defendant were refused. They will be sufficiently noticed in the opinion. The judgment was for plaintiff for $5,000 and defendant appealed.

I. The only negligence charged as ground for recovery is the failure on the part of defendant to observe the statutory requirement to so keep its fence in repair as to prevent cattle from straying on its railroad. Defendant insists that the statute requiring railroad companies to make and maintain fences on the sides of their roads is designed solely to prevent injuries to the domestic animals of adjacent landowners, and does not create a duty from defendant to its employees.

The duty of a master to his servant requires the exercise of reasonable care, not only to provide safe, adequate and suitable machinery and appliances for his use, but also such care to keep the premises upon which he is required to work in a condition reasonably safe and secure for the performance of the duties required of him. The degree of care must depend largely upon the character of duties required of the servant, the peril to which he is exposed from failure to observe it and the opportunity he has for avoiding the dangers. There are but few, if any, duties a servant is called upon to perform which are attended with more hazards than those attending the running and management of locomotives and trains upon rail-

roads, and the care the law requires of the master in respect to providing reasonably adequate and safe engines and cars is no greater than ·that required in furnishing a reasonably safe track and keeping it free from obstructions. The dangers from defects are as great in one as the other, and the care should be commensurate with the dangers. *Henry v. Railroad*, 109 Mo. 493, and cases cited.

We are taught by common experience that cattle and other animals, unless restrained, will stray upon the track of railroads and cause serious and dangerous obstructions to the operation of trains thereon, thereby imperiling the lives, not only of persons caried, but to a greater degree of each employee engaged in the duty of managing them. We can see no reason why, at common law, the railroad company would not as well be required to use reasonable care to prevent such obstructions, as to see that the ties and rails are sound, and the roadbed secure. I can conceive of no more adequate method that could be adopted by a railroad corporation for keeping domestic animals off the track of its road than that of inclosing it by fences. So it has been held that if the want of a proper fence makes a railway unsafe, and an accident happens to a passenger in consequence, the company are responsible to him, although they are under no obligation to the adjacent landowner. *Buxton v. Railroad*, 3 L. R. Q. B. 549.

It is true that the statute requiring railroad corporations to fence their tracks, only in express terms, gives to the owners of cattle or other animals killed or injured in consequence of a neglect to perform this duty a right of action, yet it has been held in this state that the law was designed likewise for the protection and safety of the traveling public. *Briggs v. Railroad*, 111 Mo. 173, and cases cited.

The United States supreme court, in discussing the

Missouri fencing law and its constitutionality under the police power, uses this emphatic language: "In few instances could the power be more wisely or beneficently exercised than in compelling railroad corporations to inclose their roads with fences having gates at crossings, and cattle guards. The speed and momentum of the locomotive render such protection against accident in thickly settled portions of the country absolutely essential. The omission to erect and maintain such fences and cattle guards in the face of the law would justly be deemed gross negligence." *Railroad v. Humes*, 115 U. S. 522.

Thus, while the statute only imposes upon the corporation, as a penalty for nonobservance of the law, double damages for animals killed or injured, the duty to fence is made obligatory. The duty is absolute and unqualified, and is reasonably supposed to have been intended for the protection of all persons upon railroad trains, who are exposed to danger by such obstructions, whether they be passengers or employees.

The right of a passenger to recover for personal injuries incurred on account of such negligence has been declared: *Blair v. Railroad*, 20 Wis. 254; *Fordyce v. Jackson*, 56 Ark. 597; *Railroad v. Wilson*, 15 S. W. Rep. (Texas) 280. And also of a parent to recover for the death of an infant child who wandered upon a railroad track by reason of a defective fence and was struck by a train. *Keyser v. Railroad*, 56 Mich. 559; *Stuettgen v. Railroad*, 80 Wis. 498: *Isabel v. Railroad*, 60 Mo. 484; *Singleton v. Railroad*, 7 C. B. N. S. 287; *Railroad v. Grablin*, 56 N. W. Rep. (Neb.) 797.

We are of the opinion that a right of action also accrues to an employee engaged upon a railroad train, for injuries received without his own fault, by reason of the negligence of the corporation in failing to comply with the fencing statute. It has so been held

under a similar statute, by the New York court of appeals *Donnegan v. Erhardt*, 119 N. Y. 472.

II. It is said in the next place that the defective fence was not the direct and proximate cause of the accident. "The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred. Proximity in point of time or space, however, is no part of the definition. That is of no importance, except as it may afford evidence for or against proximity of causation." 1 Shearman & Redfield on Negligence [4 Ed.] sec. 26.

Under this definition there can be no doubt that negligence in failing to keep the fence in repair was the immediate cause of the obstruction of the track which in a natural and continuous sequence produced the derailment of the engine and consequent injury. Without the defective fence the derailment and injury would not have occurred. The negligence was clearly the direct cause of the injury.

III. It is further insisted that the negligence of deceased, in disobeying the plain and positive rule of defendant which required that "freight trains must be under control when approaching and passing through all stations, and be prepared to stop, in case the track is obstructed," was also a proximate cause of the injury which directly contributed thereto and which prevents a recovery.

It may be admitted that deceased was acting in violation of the rules of defendant at the time the engine collided with the bull, and was, in consequence, negligent, but we are unable to see any proximate and natural connection as a cause between this negligence and the derailment of the engine and injury and death of plaintiff's husband. Mere negligence without a

resulting damage can no more be pleaded as contributory negligence to defeat an action, than it can be charged as an original cause of action. The connection as a producing cause must be made to appear in either case. "It must appear, in order to defeat the right of action, that, but for the plaintiff's negligence operating as an efficient cause of the injury, in connection with the fault of the defendant, the injury would not have happened." Beach on Cont. Neg. [2 Ed.] sec. 34.

It appears impliedly for the rule itself, and directly from the testimony of the superintendent and train dispatcher of defendant, that the purpose of the rule was to avoid collisions, obstructions and misplaced switches at stations. It appears further that the collision, which resulted in the derailment of the train occurred near a thousand feet from the first switches of the station yards. It does not appear that the engine could by the most diligent care, have been held under such control as could have prevented the collision after the danger appeared.

But it is said that the derailment did not occur immediately from the collision, but that the wheels ran safely on the ties until the switch was reached, the distance of near a thousand feet, and the engine was then thrown from the track by reason of coming into the switch in a derailed condition. We do not see how this circumstance changes or shifts the proximate cause of the accident from that of the collision with the bull, to that of the violation of the rule in question; or how the disregard of the rule became a direct and contributing cause of the injury. There was no intervening cause between the collision and the final disaster, except the contact with the switches, which there is no pretense that deceased could have avoided. We can speculate and theorize as we may as to what course of

conduct might have avoided the disaster, but the fact remains that the direct cause was the obstruction of the track which was brought about by the negligence of defendant and the consequences of which could not have been avoided by any degree of care deceased could have exercised. What might have been the result had the rule been observed, is mere speculation.

Again, it is argued that deceased was negligent in remaining on the engine, while running a thousand feet with two wheels off the rails. This contention is utenable for two reasons: *First*, because it does not appear from the evidence that the course adopted by deceased was not the safest and most prudent in the circumstances; and, *second*, when suddenly exposed to great and imminent danger he was not expected to act with that degree of prudence and wisdom which would otherwise have been required of him.

The evidence shows that deceased, as soon as he had reversed his engine, sounded the alarm and put on the air brakes, got out of the cab onto the running board and steam chest where he remained until the engine was overturned. According to the evidence he thus assumed the safest position he could have taken. The evidence further shows that when an engine is running rapidly with two of its wheels off the rails and jumping from tie to tie, it pitches and jars to such a degree that it is exceedingly difficult and dangerous to jump therefrom. One witness, an engineer, in testifying as to his own experience in riding an engine under similar circumstances stated: "It was impossible to jump. The jar of the engine riding the ties was such that a man had no control of himself. If he jumped he would fall under. He would have no use of his limbs at all. I could not gather for a spring."

With this evidence we could not say that deceased was negligent in remaining on the engine. Nor can we

say, in the circumstances, that he would have been chargeable with negligence though he did not adopt the safest and best course to avoid injury. *Adams v. Railroad*, 74 Mo. 553; *Siegrist v. Arnot*, 86 Mo. 208.

This disposes of the questions raised on the demurrer to the evidence as well as to complaints made to the rulings of the court in giving and refusing certain instructions.

V. Complaint is made to the refusal of the court to give the following instruction requested by defendant.

"The jury are instructed that if the defect or bad condition of the fence, whereby the bull came upon the track, was known to Dickson as well as to the company, there can be no recovery in this case unless the evidence shows, and the jury believe, that Dickson notified the company of such defect in the fence, and was induced to remain in the company's employment by its promise that the fences should be repaired."

The instruction evidently intended to inform the jury as to the risks deceased assumed, in case he knew of the defective fence and continued to run trains over the road without objection. But we think the instruction, as asked, was misleading and did not properly declare the law, in that it required the jury to find, as a fact, that the defect in the fence was known to deceased "as well as to the company." The language is susceptible of the interpretation that deceased was under the same obligation to inspect and ascertain existing defects as was required of the corporation. There was no positive proof that either Dickson, or defendant, had actual knowledge of the defects. It was the duty of the defendant to use reasonable care, by proper inspection, to ascertain whether defects existed. This duty, from the situation of the fence with respect to the track, and from the nature of the employment

and duty of an engineer could not justly have been required of deceased. A proper and careful discharge of his duty required constant watchfulness of the machinery he was operating, and of the track before him, and the rapidity of his movement made it impossible to examine into the condition of fencing fifty feet away, though he had time and opportunity to do it.

We think deceased could not have been chargeable with notice of the defect, unless it had been shown that such defects were so common and apparent that they could not have escaped his observation while properly attending to his business. It could not be said of him, as of the master, that he would be chargeable with knowledge, if he could have known, by the exercise of due care. Before he can be charged with having assumed risks of injury from defects in fences it was necessary to have shown that he had knowledge of them; but knowledge may have been inferred by the jury, from the nature of the defects and the opportunity for observation.

The instruction as asked was improper and the court was not required, as in criminal cases, to correct it, or give a proper one on the question intended to be covered.

No error being shown, the judgment is affirmed. All concur.