CARPER v. RECEIVERS OF NORFOLK & W. R. CO.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1897.)

No. 185.

1. MASTER AND SERVANT—RAILROAD COMPANIES—STRUCTURE ON RIGHT OF WAY—INJURY TO EMPLOYE.

A railroad company is not responsible for the negligent construction of a cattle pen, built and used by a shipper over the road on land adjoining the right of way, although unintentionally, and without the knowledge of the railroad company, it has been extended a short distance on to the right of way; nor can such company be held liable to one of its employés, injured in an accident resulting from the escape of cattle from such pen, on the ground that its duty to provide a safe place for such employé to work required it to see that the cattle pen was safely constructed.

2. RAILROAD COMPANIES—FENCING RIGHT OF WAY—INJURY TO EMPLOYE.

The duty imposed upon railroad companies by the Virginia statute (Code, c. 52, §§ 1257–1264), to fence their right of way "through all inclosed lands or lots," is a duty only to the owners of stock on such inclosed lands and not to the railroad employés; and the violation of the statute is no ground of recovery for the death of an employé killed by the derailing of his train by cattle which came upon the tracks at a place where the right of way through inclosed lands was not fenced.

In Error to the Circuit Court of the United States for the Western District of Virginia.

J. C. Wysor and B. L. Jordan, for plaintiff in error.

W. H. Bolling, W. L. Stanley, and R. M. Page, for defendants in error.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

GOFF, Circuit Judge. The plaintiff in error, also plaintiff below, on the 10th day of January, 1896, instituted an action of trespass on the case in the circuit court of Wythe county, Va., against the defendants below, claiming $10,000 damages. By proceedings duly taken the suit was removed to the circuit court of the United States for the Western district of Virginia. The declaration contained three counts, the first alleging that Frederick J. Kimball and Henry Fink, receivers of the Norfolk & Western Railroad Company, were, as such, operating said railroad at the time of the grievances therein set forth, and that one Edmund Newson was at said time employed by them as a brakeman on a freight train then run by them over the road, and that while so employed, in the year 1895,

through the gross negligence of the defendants, he was mangled, wounded, and injured, from which he instantly died.   The negligence alleged in said count was, in substance, as follows:   That said railway, in passing through the county of Wythe, in the state of Virginia, ran through the inclosed lands of one J. P. Sheffey, then leased to one George L. Carter, and that it was the duty of said Norfolk & Western Railroad Company, under the requirements of sections 1258 and 1259 of the Code of Virginia, to erect along on both sides of its roadbed, at the point where the grievances complained of were committed, on said Sheffey land, lawful fences, and keep the same in good order, but that the defendants failed in their said duty, and neglected to erect and keep in repair such fences; and also that they allowed said Carter to erect and use a cattle pen on their said roadbed for the purpose of loading cattle upon the cars, and shipping them over said railroad; and that they negligently allowed him to construct such pen in a faulty manner, and of inferior material, whereby it was entirely insufficient to restrain and keep within its bounds the large and strong cattle that Carter was in the habit of placing therein; and that on the night of ———, in 1895, a number of such cattle escaped out of said pen into the inclosed lands mentioned, and, as there were no fences as required by law, such cattle strayed upon the tracks of the railroad, and the freight train upon which Newsom was employed as such brakeman ran into the cattle, and was derailed, the cars being broken, and the said intestate so injured and killed.   The second count alleges the faulty construction of said cattle pen on said roadbed by Carter with the assent and knowledge of the defendants, the placing of cattle therein by Carter with like assent and knowledge on the part of defendants, the employment of the said Newsom, the escape of the cattle, and the derailment of the train which caused the death of the intestate.   The third count is the same as the second, with the additional allegations that the defendants failed to erect a good and sufficient cattle pen in which to confine Carter's cattle; and that they failed to instruct their servants in charge of said train to run it at a moderate rate of speed by said insufficient pen, so as to avoid frightening said cattle, and causing them to escape therefrom; and that the train was carelessly and negligently run, so that it could not be stopped from running into said cattle after they had so broken out of said pen; and that it was negligence in defendants not to have a watchman stationed at such point whereby the servants on said train could have been duly notified of said danger; and that the deceased, relying upon defendants to do their duty in giving all proper orders as to the running of their trains, entered their employment as such brakeman, and, while so employed, such train was so thrown from the track by the negligence of the defendants, to the plaintiff's damage as before mentioned. There was no demurrer to the declaration, but the plea of not guilty was filed, on which issue was joined.   The case was tried by a jury, which rendered a verdict for the defendants.   The plaintiff moved the court to set the verdict aside, as contrary to law and the evidence; but the court overruled the motion, and entered judgment

for the defendants, to which the writ of error we are now consider-
ing was sued out. On the trial of the cause, to the rulings of the
court below the plaintiff asked for and had certified several sepa-
rate bills of exceptions, on which the assignments of error relied
upon are based.

It is insisted that the court below erred in giving the following
instructions, asked for by the defendants, viz.:

"No. 2. If the jury find from the evidence that the cattle pen in question was
not constructed by defendants; that the same was constructed by the occupant
of the farm in question; that it was intended to be erected upon the lands ad-
joining defendant's right of way; and that, by mistake, the inclosure of said
pen extended for a short distance on the right of way of defendants,—then the
defendants were not responsible for any fault or negligence in the construction
and use of said pen, and there can be no recovery in this action upon the ground
of the improper or negligent construction of said cattle pen.

"No. 3. The court instructs the jury that the duty imposed by the statute upon
the railroad companies to fence their railroad is a duty only to the public, and
to the owner of the cattle of the inclosed lots of lands through which the rail-
road runs, and an employé of the company receiving a personal injury in an ac-
cident consequent upon a failure to maintain proper fences cannot recover dam-
ages of the railroad company for such injury, without showing negligence other
than the failure to fence; and unless the jury should believe from the evidence
that the plaintiff in this case has shown that his intestate, Edmund Newsom, was
killed through some other negligent act of the defendants, their agents or servants,
than the neglect to fence their roadbed at this point, they will find for the de-
fendants, although they may believe from the evidence that the defendants were
bound under the statute to fence their roadbed at this point, and had failed and
neglected to fence the same.

"No. 4. The court instructs the jury that all evidence bearing upon the ques-
tion as to inclosure of the lands through which the defendants' line ran is irrele-
vant to the case under consideration, in view of the instructions given by the
court on that question."

Considering the assignments of error in the order of the instruc-
tions on which they are founded, we have first the one relating to
the cattle pen built by George L. Carter, on the property under his
control, adjoining the right of way of the railroad company, given
as instruction No. 2. It appears from the evidence before the jury
at the time the instruction complained of was given (which we must
consider in order to properly pass upon the question of error in-
sisted upon) that Carter, who had the land on which the pen was
located in his possession, under a lease made by the owner thereof,
in constructing the fence which formed the pen, by mistake built
it for a short distance at one corner over on the land owned by the
railroad company, without the knowledge of any of the agents or
servants of said company. That it was unintentionally so located
and built was, we think, clearly shown by the evidence; and that
neither Carter himself, nor any employé of the company, was aware
that it had been so constructed, until after the accident which re-
sulted in the death of the plaintiff's intestate, when a survey then
made disclosed it, is, we think, equally clear. If there was negli-
gence in this particular, it was on the part of Carter, and the effort
to hold the railroad company responsible for the same was, in the
light of the testimony, under the proper instructions of the court,
found to be without merit by the jury, a circumstance that we now
allude to only for the purpose of showing the character of the tes-

timony before the jury at the time the court gave the instructions now being considered.    The plaintiff in error insists that it was the duty of the railroad company to provide and maintain a safe roadway, and a safe place to work at, as well as safe instruments to work with; that in permitting Carter to use a defective pen, and by hauling cattle thereto, and allowing the same to be unloaded therein, the company failed in its duty to its employé, and rendered itself liable for the damages caused thereby.    This is, we think, an entire misconception of the well-established principle referred to, of the duty of the employer to the employed, in the particulars mentioned; and the endeavor to apply the same to this case, in the absence of proof that the roadbed was defective, the cars unsafe, or the train unskillfully or negligently run, is, though ingeniously presented, absolutely untenable; and to hold these defendants liable for Carter's negligence, if negligent he was, would be to ignore all the authorities, and disregard the undisputed facts, as developed on the trial of this cause in the court below.    The instruction given was carefully drawn, and left all questions concerning the negligence of the defendants, so far as the roadbed, cars, train, and management of the same were concerned, free for the determination of the jury, and withdrew from it simply the matter of the improper or negligent construction of the cattle pen, provided the jury found that the defendants did not construct it.    The instruction asked for by the plaintiff below on this point did not correctly state the law of the case, and was properly refused.    The instruction given was, under the facts shown, entirely proper, and the assignment of error relating thereto is without merit.

The assignments of error next to be disposed of refer to the instruction given by the court below, at the request of the defendants, relating to the sections of the Code of Virginia concerning the duty imposed upon railroad companies to erect fences along certain portions of their roadbed.    The legislation bearing on that question is found in chapter 52, Code Va. 1887, which is here quoted in full, as follows:

"Chapter LII.

"Telegraph Offices to be Established by Railroad Companies; of Fencing Railroads.

"Sec. 1257. Railroad Companies to Establish and Maintain Telegraph Offices at Depots; Duties of Operators and Train Dispatchers.—Every railroad company doing business in this state shall establish and maintain along its line, at depots or stations not more than ten miles apart, telegraphic offices to be operated by competent persons in the employ of such company: provided however, that the board of public works may grant such company, in any special case, permission to have its telegraphic offices at a distance from each other greater than ten but not more than fifteen miles.    It shall be the duty of every such operator to telegraph the arrival and departure of every train so soon as it shall leave the depot or station, to the train dispatcher or person regulating the running of trains, and if there be no such person, then to the nearest telegraphic office in the direction in which the train is going.    The person receiving the telegram shall forthwith give such order or notification by telegraph as may be necessary to prevent any collision of trains.    Every railroad company failing to comply with this section shall be fined not less than fifty nor more than five hundred dollars for each offence, and any such failure for three months shall be deemed a separate offence.

"Sec. 1258. To Enclose Roadbeds with Fences; Cattle Guards.—Every such company shall cause to be erected along its line and on both sides of its roadbed,

through all enclosed lands or lots, lawful fences as defined in section two thousand and thirty-eight, which may be made of timber or wire, or of both, and shall keep the same in proper repair, and with which the owners of adjoining lands may connect their fences at such places as they may deem proper. In erecting such fences the company shall not obstruct any private crossing, but on each side thereof, across its roadbed, shall construct and keep in good order, sufficient cattle guards with which its fences shall be connected. Such cattle guards may be dispensed with by consent of the owners of such private crossings, the company, in lieu of cattle guards, erecting and keeping in good order sufficient gates.

"Sec. 1259. Qualification of Preceding Section.—The preceding section, so far as it relates to fencing, shall not apply to any part of a railroad located within the corporate limits of a city or town, nor within an unincorporated town for the distance of one-quarter of a mile either way from the company's depot, nor to any part of a railroad at a place where there is a cut or embankment with sides sufficiently steep to prevent the passage of stock at such place; nor shall it apply to a company which has compensated the owner for making and keeping in repair the necessary fencing, but the burden of proving such compensation shall be on the company, and no report of any commissioners shall be received as proof thereof unless it shall plainly appear on the face of the report, or from other evidence in connection therewith, that an estimate was made by such commissioners for the fencing and the expense for the same entered into and constituted a part of the damages reported and actually paid.

"Sec. 1260. When Companies not Liable for Injuries.—No railroad company shall be liable for any injury to any person or property on such part of its track as may be enclosed according to the provisions of this chapter, unless it be made to appear that the person or property was thereon by express permission of the company, or through the negligence of its employees, agents, or servants; or unless the injury be willful or the result of gross negligence on the part of the company, its servants, agents, or employees.

"Sec. 1261. When Unnecessary to Prove Negligence of Company.—In any action or suit against a railroad company for injury to any property on any part of its track not enclosed according to the provisions of this chapter, it shall not be necessary for the claimant to show that the injury was caused by the negligence of the company, its employees, agents, or servants.

"Sec. 1262. Construction of Cattle-Guards.—It shall be the duty of every railroad company, whose road passes through any enclosed lands in this state, to construct and keep in good order, cattle-guards sufficient to prevent the passage of stock of every kind over such land, at any point where a fence may be necessary or proper, whether it be a division fence between contiguous farms or between different parcels or tracts belonging to the same person, or a fence along a public highway. Such cattle-guards shall be constructed on request of the land owner, in writing, made to any section master or employee of the company having charge or supervision of the road at that point. If the company refuse or fail, for ten days after such request, to construct the cattle-guard at the place designated, the owner having given ten days' notice in writing to such section-master or employee, may apply to the county court of such county for the appointment of three disinterested freeholders, whose duty it shall be to go on the land and determine whether the proposed cattle-guard shall be constructed. Their decision shall be in writing, and shall be forthwith returned to and filed in the clerk's office of the county court of such county. If such decision be that the cattle-guard ought to be constructed, the company shall within twenty days thereafter construct the same. Upon its failure so to do, it shall pay the land owner five dollars for every day of such failure.

"Sec. 1263. Their Discontinuance.—Every railroad company after erecting the fences mentioned in section twelve hundred and fifty-eight may discontinue all cattle-guards enclosed by such fences, except such as are provided for in sections twelve hundred and fifty-eight and twelve hundred and sixty-two, and in lieu thereof the owners of contiguous lands may connect their fences with those of the company at such place or places as they may desire.

"Sec. 1264. Spark-Arresters.—No railroad company doing business in this state shall run on its road any locomotive not having an approved spark-arrester. Every company violating the provisions of this section shall be fined ten dollars for each offence, and each day of running such locomotive shall be deemed a separate offence."

The plaintiff in error insists that, under this legislation, a railroad company in Virginia, if it has failed to have its roadbed fenced as required therein, is liable to one of its employés for an injury done him, consequent upon such failure to fence; while the defendants in error contend that, under said sections, a railroad company is only liable for damages done to stock, caused by the failure of the railroad company to fence the roadbed along its line, where the same runs through inclosed lands and lots, and that the company is not under such circumstances liable for injuries done to employés or other such persons, because of such failure to fence. Plaintiff in error claims that the legislation in question was enacted with the object of protecting passengers and employés on the trains of railroad companies, as well as for the purpose of providing compensation to the owners for damages to their stock caused by such railroad companies, because of their failure to erect and keep in repair the fences required thereby.

In the first place, it will be conceded that, prior to the passage of the legislation quoted, railroad companies in Virginia were not required to fence their roadbeds, and that at common law such companies are not bound to provide fences for the purpose of keeping stock off of their tracks, and also that, as at common law the owner of animals is bound to restrain them, railroad companies owe no duty to such owners when their stock strays upon the tracks of such companies, except to use ordinary or reasonable care to avoid injury to said stock after the employés of the company have discovered, or by the use of reasonable diligence could have discovered, the same upon or near the tracks of the company. Whart. Neg. § 886; Railway Co. v. Elledge, 1 C. C. A. 295, 49 Fed. 356; Cooley, Torts, 654, and cases cited; Shear. & R. Neg. § 315; Ward v. Railroad Co., 4 Fed. 862.

Before this law was passed, railroad companies were liable, as they are now, to passengers whom they had agreed for hire to safely transport, for any injury occasioned by the negligence or want of ordinary care on the part of the servants of said companies; and they were then, and are now, independent of such legislation, liable to their employés for injuries occasioned by such negligence, as to which such servant had not contributed, save only such risks as are incident to and were assumed by such employé at the time of his employment. What additional remedy, if any, is given by this statute to the passenger or employé upon the railroad trains in Virginia, on account of injuries caused by the failure of the railroad company to fence its roadbed? We are unable to find any. So far as the owner of the stock is concerned, the remedy is plain and adequate. Had the legislature intended to provide an additional liability on railroad companies, for injuries to persons, brought about by the failure of such companies to construct fences at the places designated in said statute, it would certainly, concerning a matter of such universal importance, have used apt and unequivocal language. Indeed, we think it quite clear from a careful study of the legislation in question—from an examination of

the original act, its title, and the recitals in the first section thereof, in the nature of a preamble—that the legislature did not intend to make any change of the common law, other than that relating to the compensation to the owners of the stock killed or injured on the tracks of railroads, not fenced as required by said statute; and, to hold otherwise, we must give to the words used a meaning quite different from that usually accorded them. It is evident that the railroad company is only required to fence along its line when the same passes through inclosed land, dividing it, and leaving part of such land of one owner on both sides of the roadbed. In such cases, the owner having already inclosed his land by lawful fences around its exterior limits, and finding his property, by virtue of the roadbed, virtually thrown open to the commons, his stock liable to stray away or be injured, or the stock of others to enter upon his premises and do him damage, the legislature says to him that the railroad company shall erect and keep in repair lawful fences along its line through his land, except that it shall not be required so to do along that part of its road located within the corporate limits of a city or town, nor within an unincorporated town for the distance of one-quarter of a mile either way from the company's depot, nor at a place where there is a cut or embankment with sides sufficiently steep to prevent the passage of stock, nor at any place if the company has compensated the owner of the adjoining inclosed land, through which the railroad runs, for making and keeping in repair said fencing. And so it follows, as we understand the said statute, that a railroad company can fully comply with the law, and yet, in fact, not construct a single panel of fence along its entire line. Surely, this could not be if the legislative intent was to protect the public, the passenger, and employé, as well as to guard the stock and property on the inclosed land through which the road passes. If the public and those on the trains—passengers and others—were to have additional safety provided for it and them by the enactment, why was it that the fencing was not required along the entire line? Why was one mile of the line to be fenced, provided the owner of the land through which it passed did not contract to dispense with it, and the next 10 miles permitted to be without a fence, for the reason that the land through which such part of the line passed was not inclosed? The inference is quite irresistible that the legislative mind was not considering the general public, and that it did not contemplate greater safety for passengers and employés. If the legislative intent was to change the common law in the manner referred to, as claimed by the plaintiff in error, the language employed was extremely unfortunate, and the actual result attained the most lamentable failure that has come to our attention in the history of legislative effort.

The decisions of other courts have been cited by counsel for plaintiff in error, which are seemingly in conflict with the conclusion we have reached, but, in fact, they are not, as a close examination of the same will demonstrate: Dickson v. Railway Co., 124 Mo. 140, 27 S. W. 476; Donnegan v. Erhardt, 119 N. Y. 468, 23 N. E. 1051; Briggs v. Railroad Co., 111 Mo. 173, 20 S. W. 32. The Missouri and

New York statutes are radically different from the Virginia law now under consideration, and the courts of last resort in those states have held that it is the absolute and unqualified duty of railroad companies under said acts to fence the entire line of their roads. The other cases cited by the plaintiff in error refer to local statutes containing provisions not found in the sections of the Virginia Code that we have just passed upon, and consequently they can have but little weight as authority in disposing of questions raised by this writ of error.

We conclude that the instruction complained of, so far as the interests of the plaintiff's intestate were concerned, as an employé of the defendants in error, correctly interpreted to the jury the legislation to which it referred, and that the court below did not err in giving it. The rights of the deceased employé were duly guarded, and all matters pertaining to the negligence of the defendants, on all other grounds than the failure to fence, were still left for the consideration and determination of the jury. The irrelevant matter in said instruction contained was in part eliminated by the instruction afterwards given (as No. 4), in giving which it follows as a matter of course from what we have said that the court below did not err.

Deciding the questions raised by the assignments of error so far considered as we have, it becomes unnecessary, and, as the case is not to go back to the court below for a retrial, also improper, for us to dispose of the other points discussed by counsel, referring to the question of boundary, inclosure, and contributory negligence. We should not pass upon the law relating to the risks assumed by the plaintiff in error's intestate when he accepted employment of the defendants below, for the reason that neither the case made by the declaration, nor the points suggested by the assignments in error, will justify us in doing so, although counsel deemed it proper to argue the same. We must confine ourselves to the case as made by the pleadings, and disclosed by the record. In any view of the case justified by the evidence (all of which we have carefully considered), in connection with the instructions given and refused, and with reference to the pleadings, we fail to see that the plaintiff below has been prejudiced in any manner by the judgment complained of. In our opinion, a peremptory instruction by the court, directing a verdict for the defendants below, would, at least, not have been improper. We find no error, and the judgment is affirmed.