S. J. RINEHART, Respondent, v. THE KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, February 1, 1904.***

1. **RAILROADS: Killing Stock: Common Law: Stock Law.** The common law as to the owners duty to restrain his domestic animals, has never been revived or recognized in this State; and though the stock law is somewhat analogous to the common law, it does not however lessen or interfere with the obligations of railroad companies to fence their right of way as required by the statute.

2. ———: ———: **Statute: Adjoining Proprietors: Stranger's Cattle: Instructions.** It is the duty of the railroad company to maintain lawful fences on both sides of its right of way and can only be relieved therefrom where the proprietors of the abutting fields inclose such fields with lawful fences; and for injury to cattle entering such fields through an unlawful fence and thence onto the railroad right of way by reason of an insufficient fence, the railroad company will be liable, no difference whence such cattle strayed; and an instruction set out in the opinion is approved.

3. ———: ———: ———: ———: **Waiver of Fencing.** An adjoining proprietor may, as to his own stock, waive a lawful fence between himself and a railroad right of way, but he cannot waive it as to third persons or the public, since the fence required is not for the exclusive benefit of the adjoining proprietor but as well for the traveling public and incidently for owners of cattle straying upon the railroad without first becoming trespassers.

Appeal from Vernon Circuit Court.—*Hon. Henry C. Timmonds,* Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore, Cyrus Crane* and *J. P. Gilmore* for appellant.

(1) Plaintiff was not an adjoining owner within the meaning or protection of the statute requiring rail-

*Received this opinion, September 11, 1907.   See 204 Mo. 269.

roads to fence their right of way through enclosed lands and cannot, therefore, recover. Ferris v. Railway, 30 Mo. App. 122; Geiser v. Railroad, 61 Mo. App. 459; Railroad v. Hollingsworth (Tex. Civ. App.), 68 S. W. 724; Railroad v. Huffman (Tex. Civ. App.), 71 S. W. 779. (2) Kaufman, the adjoining landowner, was entirely satisfied with the fence and gate along the right of way, and with its being open (if such were true, which we deny) and plaintiff, therefore, could not complain of any defect in the fence or of the gate being open. Ells v. Railroad, 48 Mo. 231; Busby v. Railway, 81 Mo. 49; Harrington v. Railroad, 71 Mo. 384; Madison v. Railway, 60 Mo. App. 599. (3) The gate in the adjoining landowner's fence along the public highway, through which plaintiff's colt is alleged to have passed into the field contiguous to the defendant's right of way, was not open, if open at all, a sufficient length of time to charge either the landowner or the railroad company with negligence on account thereof. Kavanaugh v Railway, 163 Mo. 54; Box v. Railway, 58 Mo. App. 359; Ridenore v. Railway, 81 Mo. 227; Vinyard v. Railway, 80 Mo. 92; Fitterling v. Railway, 79 Mo. 504; Clardy v. Railway, 73 Mo. 576; Mooers v. Railway, 80 Minn. 24; Greer v. Railway, 104 Tenn. 242; Stephenson v Railway, 34 Mich. 323; Railway v. Swearingen, 47 Ill. 206; Railway v. Dickerson, 27 Ill. 55; Railway v. Elder, 45 Mich. 329; Antisdel v. Railway, 26 Wis. 145; Railway v. Swearingen, 33 Ill. 289; Railroad v. Hall, 88 Ill. 368; Odorns v. Russell, 85 Ill. 294; Railroad v. Sieres, 13 Ill. App. 261; Railroad v. Patterson, 72 Ill. App. 428.

*W. H. Hallett* for respondent.

(1) A railroad company cannot, in an action for killing stock, avail itself of the fact that the stock came upon its right of way over the premises of an adjoining proprietor unless such premises were inclosed by a lawful fence, as the statute requiring railroad corporations

to erect and maintain lawful fences on the sides of their railroads is not a provision for the exclusive benefit of the adjoining landowners, but is a police regulation for the benefit of the traveling public and incidently for the protection of all stock which comes upon the road without first becoming trespassers and because of the failure of the railroad company to erect and maintain lawful fences. Kaes v. Railroad, 6 Mo. App. 397; Carpenter v. Railroad, 25 Mo. App. 110; Smith v. Railroad, 25 Mo. App. 113; Emerson v. Railroad, 35 Mo. App. 621; Dean v. Railroad, 54 Mo. App. 647; Growney v. Railroad, 102 Mo. App. 442; Trice v. Railroad, 49 Mo. 438; Berry v. Railroad, 65 Mo. 172; Harrington v. Railroad, 71 Mo. 344; Peddicord v. Railroad, 85 Mo. 160. (2) When a fence is shown to have been defective at the time the animal went upon the track through it, the inference arises that the defendant, upon whom devolved the duty, was not maintaining a lawful fence. And if the time such fence remained defective is material, it is a matter of defense to be invoked by the defendant. Busby v. Railroad, 81 Mo. 47; Davis v. Railroad, 19 Mo. App. 430; Hamilton v. Railroad, 87 Mo. 85.

SMITH, P. J.—This is an action under the provisions of section 1105, Revised Statutes 1899, to recover double damages for the killing of plaintiff's colt by defendant's engine and cars. The petition alleges that "said animal went upon the railroad of defendant and was killed, as aforesaid, at a point in Henry township, Vernon county, where said railroad passes through, along and adjoining uninclosed cultivated land; that at the point where said animal went upon said railroad, the defendant, on and before said date, failed to erect and maintain lawful fences on the sides of its road in this, to-wit: at the point where said animal went upon said railroad, a gate through which said animal passed was standing open and had been so standing open for a

long time prior to the twenty-fifth day of December, 1901, the gate being so out of repair at said time, and long prior thereto, that it could not be closed."

The plaintiff's evidence tended to prove that the colt sued for escaped with other horses in the village of Richards; that it traveled about two miles upon the public highway, passed through an open gate into a forty-acre field of one Kaufman, and from thence through defendant's open right of way gate onto the defendant's right of way where it was run over and killed by the engine and cars of the defendant; that both the gate through which the colt passed into Kaufman's field and the defendant's right of way gate through which it passed out of Kaufman's field onto the right of way were not only open on the day of the injury, but that they had been continuously open for several days and weeks prior thereto; that the defendant's right of way gate, through which it passed onto the right of way, was defective, in that the posts were spread apart so that there was a space of about a foot between the gate and the post to which it was intended to be latched or hooked, even when the gate was closed, and that it had been in this condition for something like a year, and that Kaufman's outside gate through which the colt passed was only four feet high so when closed the fence of which it was a part was not a lawful fence. [R. S. 1899, sec. 3295.]

Defendant offered testimony tending to prove that Kaufman's gate had been closed at about four o'clock in the afternoon of the twenty-fourth day of December, 1901, and that the right of way gate was closed by being tied with a wire from two to five days prior to the day on which plaintiff's colt was killed. Defendant's evidence further tended to prove that plaintiff resided in the village of Richards and about two and a half miles from the point on defendant's roadway where the

colt entered Kaufman's field and was killed, and between which points there were several tracts of land belonging to different owners, none of which were owned by plaintiff nor in none of which he (plaintiff) had any express or implied right to have his colt. And further, that on the evening of the day preceding that of the accident the gate opening into Kaufman's field had been closed by him; and that defendant's section foreman had closed the right of way gate between two and five days before the accident.

The question which we are obliged to decide is whether or not on the evidence tending to establish the facts as we have just stated them the plaintiff was entitled to a submission of the case to the jury. It is the defendant's contention that since the plaintiff was not an adjoining owner or proprietor within the meaning of the statute requiring railroad companies to fence their right of way through enclosed lands, that he was not entitled to recover; and in support of this contention it cites and relies on Ferris v. Railway, 30 Mo. App. 122. In the course of the opinion delivered in the case just cited it is said that, the "evidence is conclusive that the plaintiff was not an adjoining landowner, nor a next adjoining owner. In fact, it stands conceded that the field from which the mare strayed was four miles in a direct line from the defendant's track, the land of a number of other proprietors intervening. It does not appear that the mare was in the field adjoining the railroad right of way, or in the field next adjoining, by the license or consent, express or implied, of either of the owners; on the contrary, it expressly appears that the mare, after leaving plaintiff's premises, traversed the lands of a number of intervening proprietors as a trespasser. On this state of the evidence there can be no recovery against the defendant under the provisions of section 809 (now section 1105), Revised Statutes," citing Berry v. Railway, 65 Mo. 172; Harrington

v. Railway, 71 Mo. 384; Johnson v. Railway, 80 Mo. 620; Busby v. Railway, 81 Mo. 49; Stanley v. Railway, 84 Mo. 631; Peddicord v. Railway, 85 Mo. 160; Carpenter v. Railway, 25 Mo. App. 110; Smith v. Railway, 25 Mo. App. 113.

An examination of these cases has not convinced us that they authorize the deduction that the law is as stated in the excerpt just quoted. The common law exempted the owners of lands from the obligation to fence and imposed on the owners of domestic animals that of confining them on their own premises. But this old rule of the common law has never been revived nor recognized in this State. [Gorman v. Railway, 26 Mo. 441; Kirkpatrick v. Railway, 71 Mo. App. 263.] While it is true that the stock law of this State—Article II, chapter 69, Revised Statutes, in its general application is somewhat analogous in its requirements to the common law it does not, however, lessen or interfere with the obligations of the several railroads in this State to fence their right of way as now required by law. [Secs. 4777, 4781, R. S. 1899; Growney v. Railway, 102 Mo. App. 442, and cases there cited.] It results that the case here is in no way affected by the provisions of the stock law.

Berry v. Railway, and the other cases which were cited as supporting the deduction in Ferris v. Railway, supra, when examined, will, we think, be found to go no further than in effect to hold that the duty of fencing the sides of their roads where they pass through enclosed and cultivated fields is not imposed upon railway companies for the exclusive benefit of the owner or proprietor of such fields; that if by an arrangement between the company and the owner of an enclosed or cultivated field the former is relieved of the duty of building fences, it omits to do so at its peril if the field be not enclosed with a lawful fence and cattle get into the field and from there go upon the road and are

killed by a passing train; and that if the field is sufficiently enclosed, that is all the protection that strangers are entitled to, and as to *their stock,* additional fences along the sides of the road are not necessary nor are they required by the statute, for as to them the sides of the road are already fenced by the fences enclosing the field.  In Johnson v. Railway, 80 Mo. 1. c. 624, it was held that, if the field of the abutting landowner is enclosed by a lawful fence and an animal breaks over it, and gets on the track of the railway company and is there struck and injured by a passing train, it is not liable therefor.  In Harrington v. Railway, 71 Mo. 384, it was held that "it was equally as incumbent upon the plaintiff when not an adjoining proprietor, and not having the right to the possession, to show that the fence of the adjoining proprietor was not a lawful fence as it would have been if the horse had gone upon the track over a fence erected by defendant along the line of its road under the statute.  If the field of the adjoining proprietor is sufficiently enclosed that is all the protection strangers are entitled to.  . . .  The cattle of strangers which are on the premises of the adjoining proprietors without right are not within the protection of the statute."

None of the numerous cases cited from our reports either by plaintiff or defendant, except that of Ferris v. Railway, hold that where the land of the adjoining owner is not surrounded by a lawful fence on the sides not adjoining the railroad right of way that there can be no recovery by a stranger who was not an adjoining or next adjoining landowner, or whose lands were remote.  The cases all hold that if the cattle of a stranger, without regard to whether or not he be an adjoining or next adjoining proprietor or however remote break into a field through the unlawful fence surrounding the sides not adjoining the railroad right of way and from there pass upon the railroad and are there

injured by a passing train, that there is liability; but if such fence be a lawful fence and such cattle break through it and are injured by the railroad, there is no liability. Whether there be one or one hundred separate enclosures intervening between that from which the cattle escape and stray and that of the adjoining proprietor into which they pass and from which they stray upon the railroad track and are injured, is of no consequence.

It is the duty of a railway company to maintain lawful fences on both sides of its right of way and it can only be relieved of that duty when the proprietor of an abutting field encloses the same on the sides thereof not abutting on such right of way with a lawful fence, and if such fence be not a lawful fence and the cattle of a stranger pass through it into such field and from there upon the road at a point where there is no railway fence, or where it is defective, and are injured, there is liability, no difference from whence such cattle strayed. It inevitably follows from this that if it be true, as is conceded, that the plaintiff's colt escaped from where he resided at Richards, two or more miles away, and from thence wandered at large until it reached the Kaufman field where it passed through the fence enclosing the sides thereof not abutting on defendant's right of way and entered such field, and from thence passed upon the defendant's road and was injured, there is liability if such fence was, as is in effect conceded, not a lawful fence. The demurrer interposed to the evidence by the defendant was therefore properly denied.

The defendant's fifth instruction told the jury that "the duty to fence its road by a railroad company is for the benefit of the adjoining landowner, and that an adjoining landowner through or along whose land a railroad passes may waive the right to have such fences and gates as are prescribed by the statutes, or agree

between themselves to dispense with same. And if you believe from the evidence that the adjoining landowner, Arthur Kaufman, did so waive his right in this instance, and that the plaintiff's colt was trespassing in said Kaufman's field, and was in such field without any consent from said Kaufman, then your verdict will be for the defendant." This the court modified and as modified it told the jury that, "the duty to fence its railroad by a railroad company is for the benefit of the adjoining landowner, and that an adjoining landowner through or along whose land a railroad passes may waive the right to have such fences and gates as are prescribed by the statute, or agree between themselves to dispense with same. And if you believe from the evidence that the adjoining landowner, Arthur Kaufman, did so waive his right in this instance, and that plaintiff's colt was trespassing in said Kaufman's field, *by going over or through a legal fence,* and was in such field without any consent from said Kaufman, then your verdict will be for the defendant." As modified, we think it correctly expressed the law.

We have no doubt under the authority of the cases cited by defendant in its brief that an adjoining landowner and a railroad company may make an agreement by which the latter may be relieved of its statutory duty to maintain fences on the sides of its road or to dispense with farm crossings, but we have been cited to no authority which upholds the contention that the adjoining landowner may by agreement with the railway company waive the performance by the latter of its statutory duty to fence its right of way as to *third persons or the public,* for the reason that this statutory duty was imposed not for the exclusive benefit of the adjoining landowners but as well for the benefit of the traveling public and, incidently, those whose cattle stray upon the railroad without first becoming trespassers. If the fence around Kaufman's field on the

sides not abutting on the railroad was a lawful fence and the plaintiff's colt broke through it and thereby became a trespasser, then there was no liability, even though there was no lawful fence between such field and the right of way, the same having been dispensed with or waived by Kaufman.

The case was in every respect submitted to the jury under instructions that were in expression unexceptionable. It was well tried and no good reason is seen why the judgment should not stand, and it is accordingly affirmed. All concur.