JOSEPH P. REED, Respondent, v. THE CHICAGO &
ALTON RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 8, 1905.

1. **APPELLATE AND TRIAL PRACTICE: Credibility of Wit-
nesses: Moral Turpitude: Physical Facts.** The moral turpitude
of a witness goes to his credibility and belongs exclusively to
the jury and the trial court in weighing the evidence; but the
appellate court must accept such witness as credible unless his
testimony is opposed to reason or physical law.

2. **RAILROADS: Killing Stock: Two Causes: Evidence: Con-
jecture.** Evidence is reviewed and held not to call for the ap-
plication of the rule that where an injury may have resulted
from either of two causes the plaintiff has the burden to show
with reasonable certainty that the cause for which the defend-

ant is liable was the one producing the injury, since the injury complained of could be ascribed to no other than the defendant's failure to fence its road without resorting to conjecture which cannot be indulged to aid the contentions of either party.

3. ——: ——: **Uninclosed Lands: Allegata et Probata: Statutory Construction.** The allegation as to the defendant's road running along the uninclosed lands and the evidence in support thereof are considered together with the statute and it is held there is no sufficient variance to warrant a demurrer to the evidence.

4. ——: ——: **Proximate Cause: Instruction.** An instruction is held sufficiently to require the jury to find that the failure to fence was the proximate cause of the injury. Distinguishing Montgomery v. Railway, 90 Mo. 446.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis*, Judge.

AFFIRMED.

*Richard Field* and *Scarritt, Griffith & Jones* for appellant.

(1) There was not sufficient proof to go to the jury upon the essential fact that plaintiff's horse was killed by collision with a railroad train. Foster v. Railway, 90 Mo. 116, and cases cited. While this may be shown by circumstantial evidence, it is held that the circumstances shown must constitute substantial evidence and must pass beyond the pale of mere possibility or conjecture. Hesse v. Railway, 36 Mo. App. 163; Perkins v. Railway, 103 Mo. 52, 59; Yeager v. Railway, 61 Mo. App. 594; Peffer v. Railway, 98 Mo. App. 292. (2) The demurrer to the evidence should have been sustained because the proof did not support the allegations of plaintiff's petition to the effect that at the locality in question the railroad ran through "uninclosed" lands. (3) The court erred in giving plaintiff's instruction numbered 1. Montgomery v. Railway, 90 Mo. 451.

*John Welborn* and *Charles Lyons* for respondent.

(1)   There was ample evidence that respondent's horse was struck by defendant's engine and the court properly overruled the demurrer to the evidence.   Mayfield v. Railway, 91 Mo. 296; Carter v. Railroad, 156 Mo. 635; Halferty v. Railway, 82 Mo. 90; Vaughan v. Railroad, 34 Mo. App. 141; Blewett v. Railway, 72 Mo. 583; Combs v. Railway, 58 Mo. App. 467; Chorn v. Railroad, 55 Mo. App. 163; Harned v. Railway, 51 Mo. App. 482; Gee v. Railway, 80 Mo. 283; McBride v. Railway, 20 Mo. App. 216; Brooks v. Railway, 98 Mo. App. 166; Sappington v. Railway, 95 App. 387; Schlotzhauer v. Railway, 89 Mo. App. 65; Moore v. Railroad, 85 Mo. App. 512; McLain v. Railway, 100 Mo. App. 384; Boggs v. Railway, 18 Mo. App. 274.   (2)   Appellant's second point is without merit for the section of the statute (sec. 1105, R. S. 1899) requires railroads to fence on the "sides of the road where the same passes through, along or adjoining inclosed or cultivated fields or uninclosed lands, etc." McBride v. Railway, 20 Mo. App. 216; Mayfield v. Railway, 91 Mo. 300; Meyers v. Trust Co., 82 Mo. 240; Duncan v. Railroad, 91 Mo. 67; Jantzen v. Railway, 83 Mo. 171; Rozzelle v. Railroad, 79 Mo. 349; Rutledge v. Railroad, 78 Mo. 290.   (3)   Besides, by section 655, R. S. 1899, it is the law that "No variance between the allegation in the pleading and the proof shall be deemed material, unless it has actually misled the adverse party," etc.   (4)   Appellant's third and last point is that the court erred in giving instruction numbered 1 for plaintiff. Respondent's instruction is correct and is a counterpart of the instruction which was approved by the St. Louis Court of Appeals in Scruggs v. Railway, 69 Mo. App. 298. See also Terry v. Railroad, 77 Mo. 254; Vaughan v. Railroad, 34 Mo. App. 141; Dooley v. Railway, 36 Mo. App. 381; Jenkins v. Railroad, 27 Mo. App. 578.

JOHNSON, J.—Action to recover double damages under section 1105, Revised Statutes 1899, for injuries inflicted upon a horse and which resulted in its death. A verdict was returned for plaintiff in the sum of two hundred dollars, upon which judgment was entered for four hundred dollars. Defendant appealed.

Complaint is made of the action of the trial court in refusing to instruct the jury to find for defendant. It is urged that under the facts disclosed by the evidence the inference that the injury to the horse resulted from a kick delivered by another horse is more reasonable than the conclusion attributing it to a collision with one of defendant's trains. Therefore it is said the jury was left to conjecture; and the rule is invoked that, "when the injury complained of may have resulted from either of two causes, for one of which the party sued is liable and the other he is not, it is for the plaintiff to show with reasonable certainty that the cause for which the party is liable produced the result." [Smart v. Kansas City, 91 Mo. App. 592.]

The facts in evidence upon which the case was submitted to the jury may be stated as follows: Plaintiff, engaged in the horse-racing business, kept several horses, among them the one injured, at the fair grounds a short distance west of Higginsville. The grounds were enclosed by a high board fence. Immediately to the north was a public road running east and west, communication between which and the enclosed grounds being afforded by a gateway provided with a suitable gate. Several hundred feet north of the road running parallel thereto was defendant's railroad. A fence separated the public road from the intervening land which was in cultivation and occupied by a Mr. Haeder. An open wagon road or lane about twenty feet wide ran north from the public road to defendant's tracks and opened into defendant's right of way. No fence separated Haeder's land from defendant's right of way for a distance of about three hundred and fifty feet, and it was possible

for stock to pass from the public road into and along the lane and from there onto defendant's right of way and Haeder's land without encountering any fence to obstruct the way. On the evening of April 11, 1903, plaintiff turned three horses into the pasture contained within the circle of a half mile race track in the fair grounds. There were several openings in the interior fences which inclosed the track; the gate in the outside fence was closed but unlocked, and it was customary for persons having business in the grounds to use this gate. Early next morning, on going to the horses, plaintiff found them in the race track pasture where they were left the night before; but one of them had his left hind leg broken in two places. As the other two animals were unshod on their hind feet plaintiff supposed that other horses kept in the fair grounds stables had been turned into the pasture without his knowledge, and that one of these, shod behind, had kicked his horse, as the character of the wound indicated such a blow. This theory was supported by the presence of a number of hoofprints plainly appearing in the turf. Upon investigation plaintiff learned that no other horses had been put into the pasture but all of them were kept in the stables that night and were found in their respective places the following day. Receiving information during the day from one of defendant's section foremen that horses had been found by him on defendant's right of way the night before, one of which was in a crippled condition, plaintiff, accompanied by the witness, Fortner, made investigation along the tracks of defendant and found at a point near the entrance of the lane to the right of way to and across the main track of defendant's road the hoofprints of horses. The injured horse was entirely unshod and plaintiff claims he could identify some of the hoofprints as having been made by the feet of that animal. Blood also was found upon the main track about three inches from the north rail. Hoofprints led out from the right of way through the lane

into the public road. Plaintiff claims to have noticed blood stains at intervals along this line of tracks, but in this he is not corroborated by his companion who testified to observing nothing but hoofprints near defendant's main line track, both on the north and south sides thereof, and a blood stain about the size of a man's hand some three inches north of the north rail. The witness Bell, defendant's section foreman, said that on the night of the accident his attention was called by the station agent to the presence of horses on the right of way. With the help of a section hand, the witness Dierking, he found two horses there and drove them down through the lane to the public road. One of these horses was limping. Dierking testified to the same fact. Several trains passed this point during the interval between the turning of the horses into the pasture and their expulsion from defendant's right of way by Bell and Dierking. From these facts it is evident the case was submitted to the jury upon the theory that someone in passing in or out of the fair grounds left the gate open, permitting the horses to escape into the public road, and from there through the lane upon defendant's right of way; that the injured horse was struck by a passing train, was afterwards driven into the public road by the section men, and from there it returned through the open gate to the pasture.

We are asked by defendant to discard entirely from our consideration the testimony of the plaintiff, for the reason that by his own admissions he has shown himself to be dishonest and untruthful—dishonest because he admits being a "fixer of races;" and untruthful because he admits making a false statement under oath to defendant regarding the ownership of the horse; and for the additional reason that his testimony relating to the facts tending to show the cause of the injury is at variance with physical conditions. The reasons based upon the moral turpitude of plaintiff are not for our consideration. They go to his credibility as a witness—a fact, the determination of which belongs exclusively to the jury

and to the trial judge in weighing the evidence upon motion for a new trial. In our consideration we must accept plaintiff as a credible witness unless the facts testified to by him are opposed to reason or physical law. But should it appear that such contradiction exists, we will not hesitate to discredit the testimony with respect to statements which cannot be reconciled to natural law. As was well said in State v. Dettmer, 124 Mo. 435: "When witnesses attempt to establish a certain theory by their testimony, they must first look to it well that their testimony must not go counter to the physical facts in the case; for if it does, neither courts nor juries are required to stultify themselves by disbelieving the immutable facts in the case." [Weltmer v. Bishop, 171 Mo. 119.]

But we are unable to perceive wherein plaintiff has overtaxed credulity with respect to any essential fact. It is said that he could not identify hoofprints, but we are not prepared to declare, as a matter of law, that an experienced horseman, knowing the condition of his horses' feet, could not do this. Also, it is claimed that plaintiff, in tracing the animal's course by blood stains, described a condition which involved the shedding of too much blood, considering the fact that the injury was near the hock, a place nearly devoid of muscular tissue. We are at a loss to say how much such a wound should have bled during the course of several hours. Defendant's own expert testified that "the blood had run on the ankle and dried on the horn. It indicated some small amount of hemorrhage." These questions were for the consideration of the jury.

No one saw the injury inflicted, but, notwithstanding inferences had to be drawn by the jury, they were such as naturally arose from the facts and circumstances shown. It may be conceded, and it is the law, that it must appear from the evidence the injury was caused by actual contact with defendant's train. [Foster v. Railway, 90 Mo. 116.] And when this elemental fact is not shown

by direct evidence, the facts and circumstances relied upon must constitute substantial evidence and pass beyond the pale of mere possibility or conjecture. [Hesse v. Railway, 36 Mo. App. 163; Perkins v. Railway, 103 Mo. 52; Yeager v. Railway, 61 Mo. App. 594; Peffer v. Railway, 98 Mo. App. 292.]

In our opinion, plaintiff has satisfied every reasonable rule and has sustained his burden. Blood and hoofprints were found near defendant's track; trains had passed along; the section men found a lame horse near by and drove it away—convincing facts that a horse had been injured at that place by a train. The imprints were identified by plaintiff; and with the gate left open the way was clear from the fair grounds to the point of injury. Such facts require nothing more than the simplest process of reasoning to supply the cause of injury. On the other hand, while the wound was such as might have followed a kick from the shod hoof of another horse, the presence of such in the pasture under the evidence could not be accounted for. Conjecture would have to be resorted to in the entertainment of that theory. The same must be done if an attempt is made to account for the horses found by the section men on the right of way, upon the hypothesis that they were other than plaintiff's horses. It readily appears that there is no room for applying the rule invoked which prohibits permission being given the jury to choose between two producing causes, for one of which defendant would not be liable. An unbroken chain of circumstances points to a collision between the animal and defendant's train. The conclussion that a kick caused the injury, if accepted, must be reached by a resort to speculation—by supplying substantive facts not in evidence. We held in Shore v. Bridge Co., 111 Mo. App. 278, that conjecture will not be indulged to aid the contention of either party.

Defendant also presses upon our consideration the point that the demurrer to the evidence should have been

sustained because of a material variance between the allegation and proof in this particular:

The petition charges that the railroad at the place in question ran through "unenclosed" lands, while it is said the proof was to the contrary. The materiality of the departure is predicated upon the fact that the fair grounds do not adjoin the right of way. They are bounded on the north by the public road, between which and the right of way lie cultivated lands inclosed by fence, with the exception that no fence divided intervening land from that of the defendant. Defendant assumes the position that "when the road runs through inclosed fields and the plaintiff is not an adjoining proprietor, he must not only prove that the right of way fence was not a lawful fence, but that the fence on the other side of the adjoining field was not a lawful fence," citing Harrington v. Railway, 71 Mo. 384, and Rinehart v. Railway; 80 S. W. 910. Section 1105, Revised Statutes, requires a railroad company to erect and maintain lawful fences, "on the sides of the road where the same passes through, along or adjoining inclosed or cultivated fields or unenclosed lands," etc. The duty imposed to fence unenclosed lands obviously is for the protection of stock owned by anybody, regardless of the place of its location. The duty to fence through inclosed lands while inuring to the benefit of the general public is for the particular protection of the adjoining owner. He may waive the performance of that duty so far as his own rights are concerned, but he cannot waive the right of other stock owners to have the statutory barrier interposed to prevent the straying of their stock upon the right of way. If the adjoining proprietor erects and maintains *lawful* fences (Revised Statutes, section 3295) around his place and the stock of a stranger breaks through and is injured, the absence of a fence on the right of way line will not raise a liability on the part of the railroad company. This is the most that can be drawn from the cases cited in favor of defendant's position. But if the adjoining

owner fails to erect and maintain a lawful fence and the stock of strangers is injured by reason of straying to the railroad track through such intervening land, then the absence of a statutory right of way fence will fix a liability upon the company. In other words, a railroad company cannot escape liability by a delegation of its duty. It is responsible in such case for the failure of the adjoining proprietor to build and maintain a statutory fence. [Rinehart v. Railway, supra.]

In the case before us, plaintiff's horse did not reach the right of way by breaking through any fences, nor by passing over adjoining land. He traveled over open roadways and reached the track because there was no fence between the lane and the right of way, and none between the land and public road. Therefore, the questions arising from delegated duty are not in this case. At the place of entrance the land was uninclosed. But whether it was inclosed or uninclosed within technical definition, the error, if any, involved in the use of the latter word was harmless, for under the facts detailed it could have no possible bearing upon any of the essential issues. The merits of the action were not affected. [R. S., 865; Morgan v. Railway 159 Mo. 284.] We conclude that no error was committed in overruling the demurrer to the evidence.

The criticism made of plaintiff's instruction numbered one that it omits to require the finding that the failure to fence was the proximate cause of injury, is not well founded. The jury was required to believe that the horse "got on defendant's railroad track . . . at a point on said track where the same runs through uninclosed lands and that said track was not fenced at said point or place, and that said horse was struck and injured by the engine or cars of defendant," etc. This was sufficient to meet all reasonable requirements. [Scruggs v. Railroad, 69 Mo. App. 298; Terry v. Railroad, 77 Mo. 254; Vaughan v. Railroad, 34 Mo. App. 141; Jenkins v. Railroad, 27 Mo. App. 578.]

Defendant misinterprets and misapplies the opinion in Montgomery v. Railway, 90 Mo. 446. There, the issue was as to the sufficiency of the fence and gate, and the instruction was condemned because it failed to confine plaintiff's right to recover to injuries directly resulting from the defects claimed. Evidence was introduced tending to show that the animals got through because somebody left the gate open; and yet the jury was told to find for plaintiff if they found the fence and gate failed to meet statutory requirements, ignoring entirely the facts brought out by defendant that the gate had been left open, which, if true, would have made the insufficiency of the fence and gate immaterial, because not the proximate cause of the injury. The distinction between that case and the one in hand is apparent.

The judgment is affirmed. All concur.