Floyd J. SILL and Billye D. Sill,
Plaintiffs–Appellants,

v.

**BURLINGTON NORTHERN RAIL-
ROAD and Sante Fe Railway Com-
pany, Defendant–Respondent.**

No. 24382.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 25, 2002.

Charles Buchanan, Buchanan, Williams, P.C., Joplin, for appellants.

Joseph L. Johnson, Lathrop & Gage, L.C., Springfield, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

On April 30, 2002, this court issued an opinion in this case. On June 25, 2002, by order of the Supreme Court of Missouri, this cause was transferred to that court. On October 22, 2002, the Supreme Court entered an order retransferring the cause to this court. The original opinion of this court, which follows, is now readopted and reissued.

Floyd J. and Billye D. Sill ("Appellants") brought suit against several defendants to recover damages as a result of a collision between a vehicle driven by Mr. Sill and a horse that is alleged to have escaped through a fence owned and maintained by Burlington Northern Railroad and Santa Fe Railroad Company ("Respondent"). Appellants contend the fence was defective and/or improperly maintained in violation

of § 389.650.[1] The trial court granted Respondent's motion to dismiss for failure to state a cause of action and partially denied Appellants' motion to file a fourth amended petition.[2] Based on the discussion presented below, we reverse and remand the cause to the trial court to reinstate the petition against Respondent, with instructions for it to allow Appellants leave to file the fourth amended petition against Respondent.

According to the facts alleged in Appellants' third amended petition, on April 1, 1999, Floyd Sill was driving his vehicle on Highway 60 in Webster County, Missouri when the vehicle collided with a horse. The collision took place approximately four-tenths of a mile west of the intersection of Highway 60 and Route U. Respondent owned and maintained a railroad line in this same proximity, and therefore, pursuant to § 389.650, was required to "erect and maintain lawful fences" along the railroad right-of-way. One such fence ran adjacent to property that was owned by, and served as pasture for the horse owned by, Michael Burks, Bonnie Burks, and/or Melissa Towe.[3]

As a result of the collision, Mr. Sill sustained injuries including a broken right arm and other injuries to his shoulders, neck, and back. Based on those injuries, and derivative injuries suffered by his wife Billye Sill for loss of services, support, and consortium, Appellants filed suit against Respondent, the Burks, and Towe to recover damages, with claims based on negligence theories.[4]

The count against Respondent contained the following allegations, to which we refer by the paragraph number in the third amended petition:

24. That [Respondent] was careless and negligent in the following respects:

 a. In failing to erect and maintain a lawful fence as required by § 389.650 of the revised Missouri statutes.

 b. In failing to inspect the fence.

 c. In failing to repair and maintain the fence.

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. Appellants filed the third amended petition on November 21, 2000. As will be discussed further in this opinion, they were also granted partial leave to amend and they filed a fourth amended petition on May 25, 2001, which did not include any claims against Respondent. There is still a suit pending against the other defendants, including the owners of the horse and owners of the property on which the horse was pastured. The trial court denied Appellants' motion for reconsideration and partially denied their motion to file a fourth amended petition. The court determined that there was no just reason for delay and designated it as final for purpose of appeal. This opinion will address only issues between Appellants and Respondent; issues related to the other defendants will be discussed only to the extent necessary for our determination of the matters before us.

3. More precise allegations appear in the fourth amended petition regarding ownership of the property and the horse. While it is not important to the issues at bar, the information contained in the fourth amended petition is that Bonnie Burks owned the property, she and her son Michael Burks owned the trailer house in which Melissa Towe lived (which was situated on the property), and Towe pastured horses on this property.

4. The counts against the Burks and Towe were based primarily on their alleged negligence in erecting and maintaining a fence to restrain livestock, failing to repair and inspect such fence, and permitting livestock to run at large in violation of § 270.010. Under § 270.010, it is unlawful for owners of domestic animals to permit them "to run at large outside the enclosure of the owner."

d. In failing to erect a fence that was adequate to contain the livestock.

e. That [Respondent], pursuant to § 389.650 is charged with the duty of erecting and maintaining lawful fences on its railroad right-of-way and that [Respondent] has adopted procedures for maintaining and inspecting the fences that are inadequate. Specifically, the procedures for inspection are inadequate in the following respects:

 i. [Respondent] has no procedure for inspecting the fences to determine the age and condition of the fence but instead relies upon complaints from landowners or the general public to learn about problems with the fences.

 ii. [Respondent] fails to have a system for responding to complaints and the failure to have a reliable system discourages complaints, further eroding the effectiveness of the inadequate procedures.

 iii. That the inadequate procedures of [Respondent] have resulted in numerous injuries to property and persons from damaged fences and [Respondent] knew that its procedures resulted in a danger to the public but [Respondent] continued to use unsafe procedures and failed to implement safe procedures.

f. That [Respondent] failed to have an adequate program to train its employees in the proper procedures for inspecting and repairing said fences and [Respondent] knew that the failure to have an adequate training program resulted in a danger to the public because of numerous injuries to property and persons caused by damaged fences but [Respondent] continued the inadequate training program and failed to implement an adequate training program.

In its order dismissing the count against Respondent with prejudice, the trial court found the following:

1. Section 389.650 ... creates a duty for [Respondent] to erect and maintain a lawful fence along its right-of-way through cultivated fields and unenclosed lands.

2. That duty is for the benefit of adjoining landowners and for those persons lawfully traveling along the railroad's right-of-way.

3. [Appellants] are outside the class of persons intended to benefit from the protection provided by the statute.

4. Any failure by [Respondent] to maintain a lawful fence pursuant to Section 389.650 ... cannot be considered the proximate cause of injuries which occur outside the railroad's right-of-way.

Appellants filed a motion for reconsideration and a motion for leave to file a fourth amended petition on April 10, 2001. Within their motion for leave to amend, Appellants argued that even if the trial court was correct to dismiss the count against Respondent for failure to state a cause of action based on a theory of negligence per se, the third amended petition also stated a common law claim for negligence against Respondent. In the alternative, Appellants requested that the trial court grant them leave to amend the petition to specifically assert a claim for negligence against Respondent based on the common law theory. In refusing to allow leave to file a fourth amended petition, the trial court determined that the common law negligence claim against Respondent "suffers from the same inability to demonstrate

proximate cause as the count previously dismissed by the [c]ourt and is hereby rejected."

Appellants raise four points on appeal. Two of them are related to the trial court's action with respect to dismissing the count against Respondent listed in Appellants' third amended petition. The two points separately address specific elements of duty and proximate cause which are associated with negligence per se or common law negligence causes of action. Taken together, which is how we will address them, Appellants assert that the trial court erred in dismissing the count against Respondent for failure to state a claim upon which a relief may be granted. Appellants argue that the allegations stated within the third amended petition state a valid cause of action based on negligence per se, and if not on that basis, then on a common law theory of negligence.

■ In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, we consider the Appellants' petition in an almost academic manner. *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001). Specifically, we must "determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in [the] case." *Id.* In the motion to dismiss, all of Appellants' averments are taken as true and all reasonable inferences are liberally granted in their favor. *Id.* "No attempt is made to weigh any facts alleged as to whether they are credible or persuasive." *Id.* It "is solely a test of the adequacy of . . . [Appellants'] petition." *Id.* "A petition is not to be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Nisbet v. Bucher*, 949 S.W.2d 111, 113 (Mo.App. E.D.1997).

■ To make an adequate claim for common law negligence, a plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff. *Lopez v. Three Rivers Electric Co–op., Inc.*, 26 S.W.3d 151, 155 (Mo. banc 2000).[5] It is clear from a simple reading of the petition that Appellants adequately address various claims of negligence; however, the two elements of negligence that the trial court apparently believes were not adequately pled as a matter of law in Appellants' petition are whether the railroad had a duty to protect the appellants from injury and whether any breach of the railroad's duty proximately caused appellants' injuries.

The trial court found that the duty of Respondent was to erect and maintain a fence but "that duty is for the benefit of adjoining landowners and for those persons lawfully traveling upon the railroad's right of way" and that "[Appellants] are outside the class of persons intended to benefit from the protection provided by the statute." At first blush, it appears that the trial court accepted the analysis of duty for a negligence per se cause of action as synonymous with the duty requirement of a common law negligence claim.

■ "Duty is the only element of negligence that is determined as a matter of law." *Deuschle v. Jobe*, 30 S.W.3d 215, 218 (Mo.App. W.D.2000). In addition, existence of a duty is normally based on foreseeability that the conduct complained of

---

5. Actual damages to the claimant's person or property are the fourth element of a negligence action. *Hoover's Dairy, Inc. v. Mid-* *America Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985).

might lead to the injury suffered. *Id.* at 219. If the injury is foreseeable and the conduct occurred, the duty has been breached. *Id.* The "duty" analysis for a negligence cause of action is not the same analysis of "duty" for a negligence per se cause of action; however, an understanding of negligence per se will aid in our discussion of whether the railroad had a "duty" to Appellants.

In the analysis of negligence per se, the precursor is a violation of a statute. *See King v. Morgan,* 873 S.W.2d 272, 275 (Mo.App. W.D.1994). A claimant may proceed on a negligence per se claim "if the following four elements are met: (1) There was, in fact, a violation of the statute; (2) The injured plaintiff was a member of the class of persons intended to be protected by the statute; (3) The injury complained of was of the kind the statute was designed to prevent; and (4) The violation of the statute was the proximate cause of the injury." *Id.* If a submissible case is made under a negligence per se cause of action, a plaintiff could recover if a jury concluded that a statute was violated and the violation was the proximate cause of the injury. *Vintila v. Drassen,* 52 S.W.3d 28, 37 (Mo.App. S.D.2001). Thus, "if the [jury] instruction were based upon the theory of negligence per se, the jury would begin their inquiry with the question of proximate cause." *Id.* The issue of whether the conduct was negligent is not an issue submitted to the jury under a negligence per se instruction. *See Cowell v. Thompson,* 713 S.W.2d 52, 54 (Mo.App. E.D.1986).

In their third amended petition, Appellants alleged that Respondent violated a statute, § 389.650, which requires railroads to "erect and maintain lawful fences" along the railroad right-of-way. They further alleged that their injuries were a direct result of wrongful conduct, including the violation of the statute. Respondent argues that § 389.650 does not create a duty to Appellants under negligence per se or common law negligence.

A review and history of the law and cases in this area is helpful to our analysis. At one time, Missouri was an open range state, but as more land became settled, stock laws were enacted under which owners of animals had a duty to restrain their livestock. *See Theener v. Kurn,* 235 Mo. App. 823, 146 S.W.2d 647, 649 (1940). Section 270.010, the statute mentioned in the counts Appellants brought against the defendants other than Respondent, is an example of a stock law, and pursuant to that statute, "[i]t shall be unlawful for the owner of any animal . . . to permit the same to run at large outside the enclosure of the owner."

Before the states began enacting stock laws, the railroads presented a dangerous situation for the animals pastured on open ranges, as well as for those persons traveling on the trains. *Theener,* 146 S.W.2d at 649. A collision between a train and an animal that had strayed on the track could cause injury not only to the animal, but potential injury to persons traveling on the train. *Id.* Thus, statutes such as § 389.650 were enacted based on a state's police power. *Id.* The stock laws were enacted, but cases have shown that the two types of statutes are not in conflict with each other in that courts determined that the enactment of stock laws in no way reduced the obligation of the railroads to build and maintain fences around their right-of-way. *Rinehart v. Kansas City Southern Ry. Co.,* 126 Mo.App. 446, 80 S.W. 910, 911 (1904).

Early cases brought under the railroad fencing statutes limited recovery for the stock owner for injuries to animals caused by a train striking the animal. *Theener,* 146 S.W.2d at 649. Over time, recovery was allowed when injury to stock was

caused by an animal becoming frightened by a train or other railroad operations or by an animal running into culverts, bridges, or other objects within the right-of-way. *Id.* Essentially, a railroad's liability under the statute is based on negligence in building or maintaining fences along its right-of-way so as to prevent stock from entering that right-of-way where a defect in such fences are the proximate cause of the injury. *Id.*

Thus, stock owners whose animals become injured within a railroad's right-of-way consistently have been considered to be members of the class of persons intended to be protected by the statute. *See id.; Dickson v. Omaha & St. L. Ry. Co.,* 124 Mo. 140, 27 S.W. 476, 477 (1894). In addition, the protected class has been extended to include the traveling public riding on the trains. *Dickson,* 27 S.W. at 477. In *Dickson,* the protected class was opened to include railroad employees who sustain injuries caused by the collision between the train and an animal. *Id.* at 478.

One case also exists in which a person, who was neither a passenger on the train nor an employee of the railroad, was considered a member of the protected class of the statute. *Isabel v. The Hannibal & St. Joseph Ry. Co.,* 60 Mo. 475, 486 (1875). In *Isabel,* a child of less than two years wandered onto a railroad track and was struck and killed by an oncoming train. *Id.* at 479. The Missouri Supreme Court found that it was not necessary "to hold that the statute imperatively requires that a fence should be constructed for the protection and safety of children." *Id.* at 486. The court further stated that "[u]nquestionably, when the law enjoins a duty, and commands a company to build a fence along the line of its road, . . . the omission to build is a breach of that duty which it owes to those for protection the fence was designed. Whilst it may be primarily in-tended to secure one object, it may incidentally have an effect on others." *Id.*

In *Theener,* a collision very similar to the one in the case at bar occurred. A mule and a horse escaped through a defective fence owned by the railroad, proceeded into the right-of-way, and traveled beyond the right-of-way onto a highway where they were struck by an automobile approximately a quarter of a mile from the defect in the fence. *Theener,* 146 S.W.2d at 648. The major difference between *Theener* and the instant case is that in *Theener* the owners of the animals were suing the railroad for the injuries sustained by the animals in the collision. *Id.* The *Theener* court held that, based on a statutory or negligence per se cause of action, "there is no liability on a railroad company for injury to animals that have departed from the right-of-way and while outside of the right-of-way are injured by other agencies than those involved in the operation of the railroad." *Id.* at 650.

We believe that although there is not a specific case in a negligence cause of action finding a duty of the railroad to a motor vehicle driver for an injury on a public highway because of a claim of the negligent maintenance of a fence, in following the *Theener* and progeny reasoning we must conclude that § 389.650 does not preclude a duty to Appellants and those who sustain injuries outside of the railroad right-of-way. Here, based primarily on the concepts explained in *Theener* and *Lins v. Boeckeler Lumber Co.,* 221 Mo. App. 181, 299 S.W. 150 (1927), it would be foreseeable to Respondent that failure to exercise reasonable care in the maintenance of the fence along its right-of-way could lead to an animal proceeding onto the track, traveling beyond the right-of-way, and colliding with an automobile on a nearby public highway. *See Theener,* 146 S.W.2d at 650; *Lins,* 299 S.W. at 150. The

same principles apply to a claim of violations of the statutory duty as to a violation of a duty imposed under the general principles of law. *Vintila*, 52 S.W.3d at 39.

Another aspect of *Theener* is analogous as well. *Theener* makes it clear that proceeding under a negligence per se theory or through a statutory remedy is not the exclusive means of recovery. *Id.* Speaking about the owners of the animals struck by the automobile, the *Theener* court agreed with the concept that a common law remedy was available to them based on the railroad's negligent performance of its statutory duty. *Id.* "If a railroad company negligently fails to maintain the kind of [e]nclosure required by law, and in consequence of such negligence an animal strays upon the track and is injured, the owner may recover the damages thus inflicted upon him, though the manner of the injury may be outside the purview of the statutory remedies." *Id.* at 649–50.

We find this concept analogous to situations similar to those at bar. For injuries sustained outside of the railroad right-of-way, a plaintiff, assuming all elements of a general negligence cause of action are met, may proceed on a common law negligence theory. Such a holding also would align well with cases that have attempted to proceed on a negligence per se theory based on a violation of the stock law. One such case involved a suit for damages for personal injuries sustained by the driver of an automobile following a collision with a mule. *Lins*, 299 S.W. at 150. Two claims of negligence were based on allegations that the animal owner allowed the mule to run at large in violation of stock laws. *Id.* In *Lins*, the plaintiff abandoned the statutory claims, but the appellate court determined that the common law negligence claim was appropriate, and that it was for the jury to determine whether "[i]t was reasonable [for the owner] to anticipate

that a mule left to roam at will at a point so near a much-traveled public highway would be liable to stray upon the road, and cause just such an accident as was caused in this case." *Id.* at 152.

We find that Appellants have properly pled the duty "element" of negligence and proceed in our analysis of whether Appellants' petition adequately meets the element of negligence proximate cause. "A plaintiff must establish both causation in fact and proximate cause." *Nisbet*, 949 S.W.2d at 115. "Proximate cause requires something in addition to a 'but for' causation test because the 'but for' causation test serves only to exclude items that are not causal in fact; it will include items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage." *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 865 (Mo. banc 1993). "To make a prima facie showing of causation, the plaintiff must show the defendant's negligent conduct more probably than not was a cause of the injury." *Nisbet*, 949 S.W.2d at 115. It is only necessary that the defendant's negligence be a cause or a contributing cause to the injury, not the exclusive cause. *Id.*

A measure of foreseeability is contained in this element as well. *Tompkins v. Cervantes*, 917 S.W.2d 186, 190 (Mo.App. E.D.1996). It involves looking back, after the occurrence of the injury, and examining whether the injury appears to have been a reasonable and probable consequence of the negligent conduct. *Id.* If the resulting "damages are surprising, unexpected, or freakish," they may not be the natural and probable consequences of a defendant's actions. *Callahan*, 863 S.W.2d at 865. We find that a driver sustaining injuries due to a collision with a horse, after that horse has escaped from a

defect in a fence that has been negligently maintained by Respondent, is more in the natural and probable realm than the freakish and surprising realm. Taking the pleadings as true and granting Appellants all reasonable inferences, Appellants have properly pled proximate cause.

The pleaded facts were sufficient to state a cause of action in negligence against Respondent. We determine that the facts alleged in the third amended petition "meet the elements of a recognized cause of action, or of a cause that might be adopted in [the] case." *Bosch,* 41 S.W.3d at 464. We reverse the trial court's dismissal of the petition against Respondent and order the cause reinstated.

 Although we have already found a cause of action in the third amended complaint, we briefly address Appellants' Point III, which is a claim that the trial court erred in denying their motion for leave to file a fourth amended petition with respect to their request to more specifically address Appellants' claim of negligence based on a common law theory. While Rule 55.33 [6] allows a party to amend pleadings, and such requests are to be granted freely, "[a] party does not, however, have an absolute right to amend his pleading." *Vickers v. Progressive Casualty Ins. Co.,* 979 S.W.2d 200, 205 (Mo.App. E.D.1998). A trial court's denial is presumed correct and is reviewed based on an abuse of discretion standard. *Id.* The following factors should be considered in deciding whether to grant leave to amend a petition: "(1) hardship to the moving party if leave is not granted; (2) reasons for failure to include any new matter in earlier pleadings; (3) timeliness of the application; (4) whether an amendment could cure any

inadequacy of the moving party's pleading; and (5) injustice resulting to the party opposing the motion, should it be granted." *Sheehan v. Northwestern Mutual Life Insurance Co.,* 44 S.W.3d 389, 394 (Mo.App. E.D.2000).

 The trial court here granted Appellants' motion to file a fourth amended petition to allow it to allege an additional theory of joint venture liability between two of the other defendants; however, the trial court denied Appellants' motion with respect to their request to specifically include a negligence claim against Respondent based on a common law theory. Using the five factors above, along with our analysis in Points I and II, we find that the trial court's actions amount to an abuse of discretion.

The trial court's only finding with respect to its decision to deny Appellants' request to specify a common law negligence claim against Respondent was that the claim "suffers from the same inability to demonstrate proximate cause" as the negligence per se count it had previously dismissed. However, as explained in the discussion of Point I, Appellants met their burden, with regard to stating a negligence cause of action, on this element. Further, the trial court granted Appellants leave to amend to add a new theory against other defendants in the case. If there was no injustice found with respect to those defendants, we fail to see how injustice would result toward Respondent. Given all of the circumstances surrounding the partial granting of their leave to amend, Appellants should be granted leave to amend and to file a fourth amended petition in which they are allowed to more specifically allege facts that would cure

---

**6.** All rule references are to Missouri Rules of Civil Procedure (2002), unless otherwise indi-

cated.

any claimed inadequacies of their third amended complaint.

In Point IV, Appellants allege that the trial court erred by not sustaining their oral motion during the hearing on the motion to dismiss to supplement their motion for leave to amend. At the hearing Appellants requested that they be allowed to add language to the count against Respondent that would explicitly state that the horse escaped through a fence owned by Respondent. This language appeared in the counts against the other defendants. At oral argument and in the briefs, both counsel for Respondent and Appellants agreed that all the parties operated on the assumption that Appellants were contending that the horse escaped through the fence owned by Respondent.

At the end of the hearing, the trial court was asked to rule on this oral motion to which the trial judge responded, "I didn't hear objection to it and it looks appropriate to me. If I allow a fourth amended petition, I don't see anything prejudicial about making the one change by interlineation that's been requested, but you all didn't speak to that. So if anybody objects to that now let me know." Respondent's counsel specifically noted that he had no objection. Given the determinations on Points I, II, and III, specifically that we are instructing the trial court to grant Appellants leave to amend with respect to the count against Respondent, we find it an abuse of discretion to deny appellants leave to amend by interlineation the petition to claim that the horse escaped through a fence owned by respondent.

The cause is remanded to the trial court to reinstate Appellants' claim for negligence against the railroad and to grant Appellants leave to amend their petition consistent with this opinion.

PREWITT, J., and PARRISH, J., concur.