BERRY v. ST. LOUIS, SALEM & LITTLE ROCK R. R. Co., APPELLANT.

1. **Railroad Fence Law Construed**: FAILURE OF COMPANY TO MAINTAIN LAWFUL FENCE ADJOINING ENCLOSED FIELD EXCUSED, WHEN.—A railroad company which, under an agreement with the owner of an enclosed and cultivated field, omits to maintain a lawful fence along its road, where it passes through such field, as required by the statute (*Wag. Stat.* 310 § 43) is liable for the killing of a stranger's cattle getting into such field and thence upon the road, unless the field is itself enclosed by a lawful fence.

2. **Policy of the Statute**: The duty of fencing the sides of its road, where it passes through enclosed and cultivated fields, is imposed by the statute upon the railroad company for the benefit of adjoining proprietors, and not for the benefit of strangers.

*Appeal from Crawford Circuit Court.*—HON. V. B. HILL, Judge.

*N. G. Clark* for appellant.

The defendant should have been permitted to prove that the ox killed was trespassing in the field of Conger at the time he was driven or ran upon the track of defendant's road. See 1st Redfield on Railways, Sec. 3, page 486. *Ells v. Pacific R. R. Co.*, 55 Mo., and authorities cited.

*Lay & Belch* for appellant.

The statutory requirement that the company shall fence where the track passes through, along or adjoining enclosed or cultivated fields, was manifestly for the benefit of the adjoining land owners, whose stock, without fences and cattle guards, might escape from their fields and come upon the railroad track. Hence the section also provides that the company shall maintain " farm-crossings of the road for the use of the proprietors or owners of the land adjoining such railroad." This " farm-crossing " then, on Conger's farm, was for his use by the terms of the law itself. It is contended on the other side, however, that it was for the use also of the plaintiff, in order that his steer while trespassing on the crops of his neighbors on one side of the road might have a safe and convenient crossing of the railroad to prey upon other crops on the other side. There can be neither law nor reason in such a proposition. See 1 Redf. Rwys, 519, *et. seq.*

HENRY, J.—This was a suit before a justice of the peace to recover damages for the killing of a steer by a train of defendant's cars, in August, 1874. There was a judgment against defendant in the justice's court from which it appealed to the circuit court, where, on a trial anew, plaintiff again had judgment, from which defendant has appealed to this court.

The facts, as disclosed by the evidence, were that plaintiff's steer got into the field of one Conger, through which the road of defendant passed, and that, in attempting to drive it from the field, it went on to defendant's track through a gap in the railroad fence left open by Conger for his accommodation in passing from one side of his field to the other, with consent of defendant. There was no evidence showing how the steer got into Conger's field. Conger testified, that outside his field, a few yards from his fence, the railroad fence was often down, and, when up, was not

a lawful fence; but nothing is stated by him, or any other witness, to show any connection between that condition of the fence and the steer's getting into the field, and if, as in the absence of evidence we shall assume, the cattle guards where the road left his field were in proper condition, the height or strength of the railroad fence outside of the field is wholly immaterial. The court, at the instance of plaintiff, gave the following instructions : 1. If defendant, where its road ran through enclosed or cultivated lands, left a gap in its fence, unprotected with cattle guards, such neglect was sufficient to entitle plaintiff to recover, although such failure might have been upon an agreement with the owner of the land; 2. If the steer was killed by the engine and cars of defendant, and such steer got on the road of defendant at a point where there was not a sufficient fence along such road, the jury will find for plaintiff in the sum they think the steer worth, at the time of the killing.

Defendant asked the following, which was refused : If they believe, from the evidence, that plaintiff's ox was trespassing in the field of O. B. Conger, and that defendant's road was fenced on the sides of the road where it passed through said field, and plaintiff's ox got on the track through an open gate, left down by said Conger at a private crossing in said field, and remained on the track until killed, defendant is not liable, and the jury should find for defendant.

This record presents an important question which has not been directly passed upon in this State. Sec. 43, page 310, Wags. Stats. provides, that "every railroad corporation formed or to be formed in this State, &c., shall erect and maintain good and substantial fences on the sides of the road where the same passes through, along, or adjoining enclosed or cultivated fields, or unenclosed prairie lands, of the height of at least five feet, with openings and gates, or bars therein and farm-crossings of the road, for the use

1. RAILROAD FENCE LAW CONSTRUED: failure of company to maintain lawful fence adjoining enclosed field when.

of the owners or proprietors of the land adjoining such railroads, and also shall construct and maintain cattle guards at all railroad crossings where fences are required as aforesaid, suitable and sufficient to prevent horses, cattle, mules and all other animals from getting on the railroad." The duty of fencing the sides of their roads through enclosed and cultivated fields is imposed upon railroad companies for the benefit of the owner or proprietor of such fields and enclosures. This was the construction placed upon the New York statute of which ours is substantially a copy in the case of *Brooks v. N. Y. & Erie R. R. Co.*, 13 Barb. 593. After quoting the first clause of the section, which is substantially the same as the first clause of our 43rd section, the court says : " Now the Legislature were making provision in the first clause of the above section for the benefit of the adjoining proprietors only, and not for strangers, who had not the legal right to use those adjoining lands and farm-crossings." In Vermont a similar statute has received the same construction. *Jackson v. Rutland & Bur. R. R. Co.*, 25 Vermont; 27 Vermont 49. Also in New Hampshire and Massachusetts. 47 N. H. 391 ; .35 N. H. 163 ; 39 N. H. 53; 98 Mass. 560. In *Brooks v. N. Y. & E. R. R. Co.*, above cited the court held that " the cattle of a stranger which are on the premises of the adjoining proprietor, without right, are not within the protection of this clause of the statute." If by an arrangement between the company and the owner of an inclosed or cultivated field the company are relieved of the duty of building the fences, they omit to do so at their peril if the field be not enclosed with a lawful fence, and cattle get into the field, and from the field go upon the road and are killed by a passing train. If the field is sufficiently enclosed, that is all the protection that strangers are entitled to, and, as to *their stock*, additional fences along the sides of the road are not necessary, nor are they required by the statute, for as to them the sides of the road are already

*2. POLICY OF THE STATUTE:*

fenced by the fences enclosing the field. The gaps of the fences on the sides of the road having been left open by Conger, with the consent of defendant, the case is the same with regard to defendant's liability as if no fences had been erected there at all. Defendant, on the trial, offered to prove by Conger the character of the fencing around his field, but the court refused to admit the testimony. In our view of the case, that was a pertinent inquiry. The instructions given by the court are in conflict with what we regard as the law of the case, and the judgment is, therefore, reversed and the cause remanded. The other Judges concur.