STANLEY V. THE MISSOURI PACIFIC RAILWAY COM-
PANY, *Appellant.*

1. **Railroad:** KILLING STOCK: DOUBLE DAMAGES: STATEMENT. A statement against a railroad company for double damages for killing plaintiff's hogs, which alleges that they strayed upon defendant's road at a place where it is required by law to erect and maintain lawful fences on the sides of its road, which it had failed to do, by reason of which said hogs were run over and killed by defendant's cars, although defective in not averring that the point was not at a public or private crossing, nor within the limits of an incorporated town or city, is sufficient after verdict, when the deficiency has been supplied by the evidence.

2. ————: LAW RESTRAINING SWINE: DUTY TO FENCE: DOUBLE DAMAGES. In a county where the law restraining swine from running at large is in force, a railroad company is relieved from the duty of fencing against them merely to prevent their getting upon its track; but where its road passes through, along, or adjoining inclosed or cultivated fields it is under legal obligation to erect and maintain lawful fences on the sides of its road, and is liable in double damages for injury to swine by its engines and cars where they entered upon its track from such fields, because of its failure to erect and maintain lawful fences along the sides of its road.

*Appeal from Cass Circuit Court.*—HON. N. M. GIVAN, Judge.

**AFFIRMED.**

*Robert Adams* and *George N. Bowles* for appellant.

One of the questions presented by this record is, is the defendant liable under the double damage act for injuring and killing swine entering upon its track in counties where the act to prevent swine from running at large has been adopted pursuant to the provisions of the act? Section five of the act, Session Acts of 1879, page

158, provides: "That where said vote was taken and resulted in favor of restraining swine from running at large; and it shall not be lawful for swine of any age or description to run at large off the premises and outside of the inclosure of the owner of such swine in such county." In Kansas, where a similar statute exists, it has been held repeatedly that the obligation of the owner to restrain his animal, and that of the railroad company to fence its right of way, are of equal force, and he who disregards the one cannot recover of the other for injury resulting alone from their concurrent disregard of statute obligations. *Ry. Co. v. Lea*, 20 Kansas 353; *Ry. Co. v. Landis*, 24 Kansas 406; *Ry. Co. v. Dyche*, 28 Kansas 200; *Ry. Co. v. Mossman*, 30 Kansas 336. Our statute goes further than the Kansas statute and provides that it shall not be necessary for any person to fence against swine in any county in which it shall be unlawful for the same to run at large. Section 12, Session Acts of 1879, page 160. The statement in this case cannot be held sufficient, and the instruction asked at the close of plaintiff's testimony, to find for defendant, should have been given. The petition contains no allegation that the point where the animals got on to defendant's track was not at a public or private crossing, nor that it was not within the limits of an incorporated town or city, nor is there any allegation in the petition from which these facts may be inferred. It is within the range of numerous decisions and fails to state facts sufficient to constitute a cause of action. *Schulte v. St. L., etc., Ry. Co.*, 76 Mo. 324; *Davis v. M., K. & T. Ry. Co.*, 65 Mo. 441; *Rowland v. St. L., etc., Ry. Co.*, 73 Mo. 619.

*Comingo & Slover* for respondent.

Plaintiff's hogs were in his lawful inclosure when they escaped under defendant's fence and went on its track; defendant was required to erect the fence of this inclosure on the side of its road (R. S., sec. 809), and

unless it filled the requirements of section 809, the railroad is liable for damages resulting from its negligence. Section 5 of the hog law, and section 809, *supra*, must be construed together. The statutes of Kansas are wholly unlike ours, and the Kansas cases cited by appellant are not applicable to the case at bar. Defendant's motion in arrest was properly overruled. Though it is not expressly stated in the complaint filed by plaintiff, that the point at which his swine got on defendant's track was not at a public or private crossing, nor that it was not within the limits of an incorporated town or city, it is alleged that they got on at a place on said road where defendant was required by law to erect and maintain a lawful fence on the side of its road. This is sufficient. *Bowen v. The H. & St. Jo. R. R. Co.*, 75 Mo. 426; *Edwards v. K. C., St. Jo & C. B. R. R. Co.*, 74 *ib.* 117. Even if the complaint were insufficient for the reason alleged, the defect has been cured by the admissions of defendant at the trial. The agreed statement admits that the hogs got on the track and were killed at a point not on a public or private crossing, nor in the corporate limits of an incorporated town or city.

DEARMOND, C.—Plaintiff's statement, filed with a justice of the peace of the proper township, contains, among other things, the following: "That on or about the eighth day of August, 1881, said defendant owned and was operating a railroad through Pleasant Hill township, Cass county, Missouri, and while so operating the same at the time above stated, at a place on said road in said Pleasant Hill township, where it is required by law to erect and maintain lawful fences on the sides of its road, but had failed to do so, by reason of which plaintiff's hogs strayed onto defendant's railroad track, and said defendant, by its agents and employes, ran an engine and train of cars over and upon five hogs, the same being the property of plaintiff, and of the value of fifty dollars, by reason of which said hogs were killed, and the plaintiff

damaged in the sum of fifty dollars, for which he asks judgment, and that said damages be doubled," etc.

Afterwards, in the circuit court, the cause was tried on the statement filed with the justice, and the agreed facts, to-wit: "That defendant's train, on the first of August, 1881, ran over and killed five of plaintiff's hogs, of the value of fifty dollars. That said hogs got on defendant's track from plaintiff's land; that it was not woodland; that defendant's road was fenced at the point where plaintiff's hogs got on the track, and where they were killed; that it was not on a public crossing, nor a private crossing nor in the corporate limits of an incorporated town or city; that the land where the hogs got on defendant's track was not laid out in town lots; that the accident did not happen within the switch limits of a station; that the stock got from a field of plaintiff's on the line of defendant's road; that said field was, at the time of the accident, enclosed on the east, west and north sides by a good fence, but that plaintiff had not built a fence on the south side of said field next the line of defendant's road; that defendant had a fence along the line of its road at said point sufficient to turn cattle and horses; that plaintiff's hogs got on the track by passing under said fence at a point where it crossed a washout or ditch, of a depth that was sufficient to permit the hogs to pass under said fence, and that the accident occurred in Pleasant Hill township, Cass county, Missouri. It is further admitted that the act of the legislature of Missouri, known as the Hog Law, had been adopted by a vote of the people of said county prior to the time of said accident and was then in force."

Plaintiff recovered judgment for one hundred dollars, and defendant appealed.

I. In the motion in arrest (which, as well as a motion for a new trial, was overruled), the statement is attacked as not stating facts sufficient to constitute a cause of action. On argument here the objection is made specific, and attention is directed to the fact that it is

not averred that the point where the hogs got onto the railroad track was not at a public or private crossing, nor within the limits of an incorporated town or city ; and it is argued that the statement contains no allegations from which these facts may be inferred. The statement is defective, but after verdict, when the *admitted facts* have supplied the deficiency, the objection was properly disregarded. *Edwards v. R. R. Co.*, 74 Mo. 117; *Kronski v. M. P. Ry. Co.*, 77 Mo. 362; *Perriquez v. Railroad*, 78 Mo. 91 ; *Asher v. St. L., I. M. & S. Ry.*, 79 Mo. 432.

II.  The *hog law* (chap. 159, R. S.), being, according to agreement of parties, in force in Cass county when plaintiff's hogs were killed, is the defendant liable for double damages, single damages, or not at all? Certain Kansas cases are cited by appellant's counsel. Mrs. Lea owned a cow which she was required by law to "confine." The railroad company was required by law to fence. Mrs. Lea suffered her cow to roam abroad. The company did not fence its road. The cow strolled onto the unfenced road and was run over by the cars and killed. The court decided that an action for killing the cow could not be maintained, both parties being violators of the law, and between wrong-doers the courts will not decide. *R. R. Co. v. Lea*, 20 Kas. 353. Again, Landis owned one hundred and sixty acres of land, and through it the railroad company had a right of way, and ran their trains. The legal duty of confining one's animals and fencing one's railroad was as in the case just cited. Landis had a lawful fence enclosing his quarter section. The railroad through the land was not fenced. Within this enclosure, on the unfenced railroad, Landis' mule was killed by the cars. The court decided that Landis could not recover for the injury. The argument is that Landis was bound to confine his mule, that the mule was confined as to all the world except the railroad company, which had and used the right of way strip through the

enclosure. That as to the company, the mule was not confined, and Landis' case was not helped by the fact that the company had disregarded its statutory duty to fence. *R. R. Co. v. Landis*, 24 Kas. 406. Another case, *R. R. v. Mossman*, 30 Kansas 336, decides that "confined" and "prohibited from running at large" mean substantially the same thing.

Our own court, in *Gorman v. Pacific Railroad*, 26 Mo. 450, says: "The motive of the law in requiring railroads to be fenced is not the security of cattle only, but chiefly the preservation of the persons and lives of passengers which would be greatly endangered if cattle were not restrained from wandering upon them." At another place in the same opinion it is observed: "As proprietor, the company is under no greater obligation to fence its road than any other owner of land." In *Clark's Adm'r v. H. & St. Jo. R. R.*, 36 Mo. 202, it is declared that the requirement is to fence in the railroads and fence out the animals, not to "enclose the farms or fields of private land owners for their benefit, nor for any other purpose." By amendment of the law, double damages have long been allowed, not only for injuries to animals on the railroads, but also by reason of animals escaping from or coming upon the premises of private land owners, from the failure to fence as required. The change wrought is well shown in *Silver v. K. C., St. L. & C. R. R.*, 78 Mo. 528. The two-fold object of the law is accomplished in the protection of the traveling public, and of the adjacent land owner. The railroad fence is now designed to protect, among other things, the fields and farms which it serves, in part, to enclose. The land owner has the *right* to utilize it in enclosing his premises. Then follows his further right to insist that it be erected and maintained according to law, that his lands, improvements and animals shall be protected by lawful and sufficient fences. *Berry v. Railroad*, 65 Mo. 172; *Harrington v. C., R. I. & P. R. R.*, 71 Mo. 384. By virtue of this hog law, "it shall not be lawful for swine   *   *   *

to run at large off the premises and outside the inclosure of the owner." "It shall not be necessary for any person to fence against swine." R. S., secs. 7411, 7418. From this it would seem to follow that in a county where the hog law is in force, a railroad company is relieved from the duty of fencing against swine *merely to prevent their getting upon its track;* as where the road passes through "unenclosed lands." But the legal obligation to "erect and maintain lawful fences on the sides of the road where the same passes through, along, or adjoining enclosed or cultivated fields," remains the same everywhere in the state. The general law prescribes what are lawful fences. The general statute, too, requires these lawful fences to be built and maintained for a double purpose, as we have seen ; it devotes them to the purpose of enclosing the fields as well as the railroad strip. They are required, among other things, to prevent damages resulting "by reason of any horses, cattle, mules, or other *animals* escaping from or coming upon such lands, fields, or enclosures."

Stanley was required by the hog law to restrain his swine from running at large off his premises, or outside of his enclosure. The railroad company was required by the general law to erect and maintain a lawful fence on the side of its road adjoining Stanley's field. Stanley has good and sufficient fences on the north, east, and west sides of this field. On the south side the railroad fence completed the enclosure. But this railroad fence was not a lawful fence, under the general statute. A lawful fence was required to keep the hogs upon Stanley's premises and within his enclosures, where it was his right and *duty* to keep them. He was entitled to the protection of such a fence on the railroad side of his field. As the direct result of the company's "failure to construct and maintain such fence," his hogs were killed, and the owner thereby damaged. Referring again to the Kansas cases, I do not doubt the correctness of the legal proposition that the courts will not decide between

wrong-doers as to which shall bear, or how they shall divide, the burden of the violated law.    But the doctrine, I think, does not apply in cases such as this. Stanley did confine his hogs, but one enclosing fence was insufficient, in fact, and under the general law, that fence it was the duty of the railroad company to maintain, as the general law required.    There is but one wrong-doer in the case, and that one must respond in double damages, because by the statute it is so provided.

All concur in the opinion that the judgment should be affirmed.