## SMITH, Respondent, v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, October 22, 1907.

1. **RAILROADS: Fences: Killing Stock: Pleading.** In an action against a railroad company for stock killed and injured by the defendant's trains, where such stock went upon the right of way on account of the defendant's violation of section 1105, Revised Statutes 1899, a petition which in its allegations follows the language of the statute is sufficient.

2. **PRACTICE: Evidence: Objection.** Where evidence was admitted against an objection which did not justify its exclusion, it was not error although the evidence was inadmissible for a reason not stated in the objection; the appellate court will not review the alleged error in admitting it in such case because the objection was not sufficiently certain.

3. **RAILROADS: Fences: Adjoining Proprietor.** A railroad company is liable under section 1105, Revised Statutes 1899, for killing stock which got upon its track through its defective right of way fence, although the animals did not belong to an adjoining proprietor, but escaped from another enclosure into the field adjoining the right of way fence through which they passed.

4. ——: ——: **Notice of Defective Fence.** In an action against a railroad company for killing stock which escaped upon its right of way on account of a defective right of way fence, where it was shown that the gap in the fence through which the animals got upon the right of way was made by the son of the section boss of the defendant and continued open for several days, this was conclusive that the defendant's agents knew of the defective fence.

5. ——: ——: **Instruction: Other Cause of Injury.** In an action against a railroad company for killing and injuring stock which escaped upon its right of way by reason of a defective right of way fence, where the evidence showed that the injuries were caused by collision with defendant's engine and cars, it was not reversible error to refuse an instruction telling the jury to find for the defendant if the injuries were caused from some other reason, when there was no evidence that the injuries, except some insignificant scratches, were received from any other cause.

6. ——: ——: **Injuring Stock: Measure of Damages.** In an action against a railroad company, under section 1105, Revised Statutes 1899, for injuring stock which were not totally destroyed, the measure of damages is the difference between the value of the stock before the injury and immediately thereafter and the reasonable expense incurred or time spent in restoring the property injured; an instruction on the measure of damages which ignored the element of expense and time was properly refused.

Appeal from Audrain Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

AFFIRMED.

*Scarritt, Scarritt & Jones* for appellant.

(1) The allegation that the railroad passed through enclosed fields must be construed to mean that the adjoining field was lawfully enclosed that is by a lawful fence. Bank v. Railway, 109 Mo. App. 165; Seidel v. Railway, 109 Mo. App. 160. Plaintiff is bound by the allegations of his petition. "Parties must stand or fall upon their pleadings." Ray v. Bowles, 83 Mo. 170; Steinburg v. Insurance Co., 49 Mo. App. 265. (2) In a suit upon a penal statute such as this, it is particularly true that the petition is strictly construed against the pleader. McIntosh v. Railroad, 103 Mo. 131; Barker v. Railroad, 91 Mo. 86. (3) Where the railroad runs through enclosed fields the railway company is required to fence the sides of its road solely for the benefit of the proprietor of such adjoining enclosed field or one whose animals are in such adjoining field lawfully. Geiser v. Railway, 61 Mo. App. 459; Harrington v. Railroad, 71 Mo. 384; Ferris v. Railroad, 30 Mo. App. 122.

*P. H. Cullen* for respondent.

Under the statutes and decisions of this State, the defendant is liable for this injury. Growney v. Railroad,

102 Mo. App. 442; Berry v. Railroad, 65 Mo. 175; Meadows v. Railroad, 82 Mo. App. 83; Humes v. Railroad, 9 Mo. App. 588; Emmerson v. Railroad, 35 Mo. App. 621; R. S. 1£99, sec. 1105.

STATEMENT.—Omitting caption, the petition is as follows:

"Plaintiff states that defendant is, and was at all the times hereinafter mentioned, a corporation formed and organized under the laws of the State of Illinois and engaged in running and operating a railroad in the State of Missouri.

"That plaintiff was, on the eleventh day of October, 1905, the owner of three horses, two mules and one mare of the value of one thousand dollars.

"That on the said eleventh day of October, 1905, said animals went upon the railroad of the defendant and were, while upon said railroad, struck by the locomotive and cars then and there being managed, operated and run by the agents and servants of defendant and the said mare belonging to plaintiff was killed, and the remainder of said stock were greatly crippled, injured and their value and usefulness practically destroyed.

"That said animals went upon said railroad, not at the crossing of any public highway or any other road, and not within the limits of any incorporated town or city, but at a point where said railroad passed through, along and adjoining inclosed and cultivated fields and lands.

"That at the point where said animals went on said road defendant on and before said date failed and neglected to erect and maintain lawful fences on the side of its roads and to construct and maintain cattle-guards reasonably sufficient to turn ordinary stock.

"And that the injury aforesaid was occasioned by defendant's failure to construct and maintain such fences and cattle-guards.

"Plaintiff says he is damaged in the premises in the sum of one thousand dollars. Wherefore, he prays judgment against the defendant for two thousand dollars and for his costs."

The answer was a general denial. The verdict was for plaintiff for three hundred dollars, which, on his motion, was doubled by the court and judgment rendered for six hundred dollars, from which defendant appealed.

The facts are as follows: On the north side of, and adjoining defendant's right of way, in Audrain county, is what is known as the "Doolin farm." The farm was rented in the year 1905, to two tenants and was divided into two fields or plots. The west field was pasture land and was rented by plaintiff. The east field was rented to Creed Ray and he cultivated it in corn, which was standing in the field in October. The fence between the pasture and cornfield was constructed of posts, sixteen feet apart, upon which were strung three wires. The posts were rotten and in places broken off. On October eleventh, plaintiff had five horses and two mules running in his pasture field. They all escaped from the pasture into Ray's cornfield, at a place where the fence posts in the division fence had rotted off. The animals went from the cornfield through a gap in defendant's fence on to its right of way, and were bunched together on the track and right of way, about eight o'clock p. m., when a freight train, running, at a speed of from twenty to twenty-five miles an hour, struck them. One of the horses, a gray mare, was struck by the engine and so badly crippled she had to be killed; and plaintiff's evidence tends to show that three other horses and the two mules were also struck by the engine or cars and badly injured. Defendant's evidence tends to show that probably one other of the animals was struck by the engine, and all but two were clear of the track as the cars passed. Plaintiff's evidence tends to show the gray

mare, which had to be killed, was worth from two hundred to two hundred and twenty-five dollars before she was injured; that a roan horse, worth two hundred dollars, was so badly damaged as not to be worth more than twenty-five dollars after the injury; that one young mare, worth seventy-five dollars, was so badly injured as not to be worth over ten dollars, and another young mare of the same value was damaged at least forty dollars by her injuries; that the damage to the two mules was from seventy-five to one hundred dollars, and the injuries to all the animals were permanent. On the other hand, defendant's evidence tends to show the injuries to none of the animals, except the one killed, were of any serious consequence, and were very slight, and that practically no damage was done them. It was shown by defendant that Audrain county had adopted the law prohibiting swine from running at large.

BLAND, P. J. (after stating the facts).—1. At the threshold of the case defendant objected to the introduction of any evidence, on the ground that the petition failed to state any cause of action. The petition contains all the allegations essential to plaintiff's right to recover, and follows the language of the statute upon which the action is bottomed, therefore, no error was committed by the trial court in overruling the objection.

2. It is alleged in the petition, that the horses and mules went upon the railroad where it "passed through, along and adjoining inclosed and cultivated fields and lands." From this allegation, the inference should be drawn, or the presumption indulged, that the fields and lands were inclosed by a lawful fence. [Harrington v. Railroad, 71 Mo. 384; Seidel v. Railroad, 109 Mo. App. 160, 83 S. W. 77.] And it is contended by defendant that the evidence offered by plaintiff tending to show the partition fence separating the pasture from the cornfield, contradicted the allegations of the petition in re-

gard to the inclosure, and should have been rejected.
The ground of the objection was, "there is no allegation
in the petition with reference to the fence between the
pasture and the cornfield," not that the evidence tended
to contradict a presumption of fact arising from the
allegations of the petition. It was not essential to the
admissibility of the evidence, that the defect in the
partition fence should have been specifically stated in
the petition, hence the court did not err in refusing to
sustain the objection on the ground stated and relied on
by defendant at the trial. It is the well-established rule
of practice in the appellate courts of this State, that
objections to evidence must be certain to entitle the par-
ty making them to have the question reviewed (Kansas
City v. Scarritt, 169 Mo. 488, 69 S. W. 283), and unless
they are certain they amount to no objection at all.
[Gayle v. Missouri Car & Foundry Co., 177 Mo. 427,
. 76 S. W. 987.] Nor can a party on appeal raise a speci-
fic objection to the admission of evidence which he did
not interpose at the trial, therefore the error relied on
here in respect to the admission of evidence is not re-
viewable.

3. Plaintiff's evidence shows that his animals es-
caped from his pasture, through or over a defective fence,
into Ray's cornfield, thence through a gap in the rail-
road fence on to the railroad. Upon these facts defend-
ant contends it is not liable to plaintiff for the damages
sustained on account of the injuries to his stock, and
insists that section 1105, Revised Statutes 1899, is in-
tended only for the protection of the adjoining proprie-
tor, and not for owners of animals that are unlawfully
upon adjoining inclosures. This contention is supported
by the case of Ferris v. Railway, 30 Mo. App. 122. The
Ferris case is not in harmony with the rulings of the
Supreme Court in Stanley v. Railway, 84 Mo. 631;
Kingsbury v. Railway, 156 Mo. 388, 57 S. W. 547; Dar-
by v. Railway, Ib. 391, 57 S. W. 550, and is expressly.

overruled in the case of Rinehart v. Railway, 102 S. W. (Mo.) 958, where it is held that the fact the animal injured came upon the railroad through or over a defective railroad fence, from premises upon which it was a trespasser, does not relieve the railroad company from liability under the provisions of section 1105, supra.

4. Defendant, for the purpose of showing the fence between plaintiff's pasture and Ray's cornfield was a lawful one, showed that Audrain county had adopted the law prohibiting swine from running at large, and that the fence was composed of three wires on posts, set sixteen feet apart. The statute (sec. 3295, R. S. 1899) provides that in any county in which swine are restrained from running at large, a wire fence composed of three barbed wires, tensely stretched on posts, firmly set in the ground not more than sixteen feet apart, shall be a lawful fence. Plaintiff's evidence is that in places in the fence the posts were rotten, and the horses got into the cornfield through the fence where the posts were rotted off. If this be true, then the fence was not a lawful one, and defendant is not relieved of liability on account of the animals going upon the railroad track from Ray's cornfield, where they had no right to be. It is further contended by defendant, that there is no evidence that it knew the gap had been made in the fence, or that the gap had existed for a sufficient length of time to warrant an inference that it knew of its existence, and had had time to repair it. Defendant's employees, working on the section, testified the gap was made seven or eight days before the accident, and that when working on the section they passed it and saw it, in fact, the uncontradicted evidence is that the son of the section boss made the gap for the purpose of hauling out old ties from the railroad right of way. This evidence leaves no room to doubt that defendant's servants and agents knew of the existence of the gap and, in fact, tends to show it was made with the knowledge and consent of the section

boss. Therefore, plaintiff's evidence tended to prove every fact essential to his right of recovery and there was no error in refusing defendant's instruction in the nature of a demurrer to the evidence.

5. Defendant asked the following instructions:

"2. The court instructs the jury that the burden is upon the plaintiff and remains with the plaintiff throughout this case to prove to your reasonable satisfaction that the injuries, if any, to the horses and mules in question, occurred solely by being actually struck by one of defendant's railroad trains; and if you believe from the evidence, that some of the injuries complained of to the horses and mules in question, may have occurred from another cause as well as from being actually struck by one of defendant's railroad trains, then you should resolve such doubt in favor of the defendant railway company, and must not allow plaintiff any damages in this case for such injuries."

The court modified the instruction and gave it in the following form:

"The court instructs the jury that the burden is upon the plaintiff and remains with the plaintiff throughout this case to prove to your reasonable satisfaction that the injuries, if any, to the horses and mules in question, occurred solely by being actually struck by one of defendant's railroad trains; and unless you so find from the evidence the plaintiff is not entitled to recover."

Defendant insists that the instruction should have been given as asked. One of the animals had a scratch on its nose, which some of the witnesses testified "looked like it might have been made by a barbed wire." This injury, however, was insignificant. The animal was skinned and bruised on other parts of its body, and its injuries, as well as the injuries to the other animals, described by the witnesses, indicated they had been made by violent external means, and there is no evidence showing or tending to show that any of the injuries, ex-

cept the scratch on the nose, were caused in any other manner than by probable contact with defendant's locomotive and train of cars. On account of the nose scratch, the instruction should have been given as asked, but this injury was so insignificant and inconsequential that it is not likely the jury took it into consideration in estimating the damages, and for this reason the error in modifying the instruction was harmless.

6. Defendant asked the following instruction, which the court refused:

"7. The court instructs the jury that if you believe from the evidence any of plaintiff's horses in question, that is now living, was injured at the time in question by being actually struck by a railroad train, as to such horses you can allow damages only in such sum as you believe from the evidence the present value of such horse is depreciated, if at all, by such injury, if any, so received."

All the evidence tends to show the injuries to all the animals not killed were permanent. In Cunningham v. Dickerson, 104 Mo. App. l. c. 413, 79 S. W. 492, we said: "When property is not entirely lost or destroyed but only impaired in value, the measure of damages is the difference between the value before the injury and immediately thereafter and the reasonable expense incurred or value of time spent in reasonable endeavor to preserve or restore the property injured. [1 Field on Damages, p. 621; Dietrich v. Railway, 89 Mo. App. 36; Hoffman v. Railway, 51 Mo. App. 273.]" Expense incurred and value of time spent in curing the injured animals are ignored by the instruction; for these reasons it was properly refused.

7. It is finally contended that the damages are excessive. This contention is not borne out by the evidence of the plaintiff; on the contrary his evidence tends to show his actual damages were considerably in excess of the sum assessed by the jury. No reversible

error appearing in the record, the judgment is affirmed. All concur.