# E. S. INGALSBE v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.

### Division One, July 27, 1922.

1. **PLEADING: Amendment in Circuit Court: Unfenced Railroad: Killing Cow: Double Damages.** In an action brought against a railroad company before a justice of the peace, for the loss of a cow, alleged to have been due to defendant's failure to fence its railroad, wherein plaintiff obtained judgment, in which the amount of the verdict was doubled in accordance with the statute, and from which defendant appealed to the circuit court, an amendment by plaintiff of his complaint by striking out the prayer for double damages was permissible under the statute (Sec. 7587, R. S. 1919) expressly providing that the statement of plaintiff's cause of action may be amended upon appeal when, by such amendment,

295 Mo.—12

substantial justice will be promoted, the cause of action in such case being the wrong out of which the liability is alleged to have grown, or the liability itself, and the amendment therefore coming within the statutory permission.

2. RAILROAD: Fencing Against Egress of Animals: Death from Eating Sorghum Cane: Liability.   There is nothing in the statute requiring railroads to fence their tracks which makes it their duty to construct fences to prevent animals, which stray onto their tracks, from leaving the right-of-way and going onto the land of another where they may be injured.   So that where plaintiff's cow entered upon the unfenced right-of-way of defendant railroad company and passed from it into the field of a private citizen, where she "was killed by reason of eating too much sorghum cane" then growing in said field, the railroad company is not liable in damages for the value of said cow.

3. ———: ———: Duty of Railroad.   A railroad company owes to the proprietor adjoining its right-of-way the duty of maintaining a lawful fence and is liable in damages for injury to his animals while upon the right-of-way which is due to a failure to perform that duty; but it is not its duty to erect fences to prevent such animals from leaving its right-of-way.

4. ———: ———: ———: Purpose of Statute.   The purposes of the statute requiring railroad rights-of-way to be fenced are:  (a) to protect the public from injury in the use of railroad facilities for transportation of persons or property by protecting trains and their contents from dangers incident to the presence of domestic animals upon the tracks;  (b) to protect the owners of such animals from the danger of loss incident to their going upon the tracks;  (c) to compel the railroad company to do its part in fencing the right-of-way; and none of these purposes requires the railroad company to so construct its fences as to prevent a cow, which has entered upon its unfenced right-of-way, from crossing over and entering upon an adjoining field where she eats sorghum cane or other provender in such quantities as to kill her.

Transferred from Springfield Court of Appeals.

REVERSED.

*W. F. Evans* and *W. J. Orr* for appellant.

*Garry H. Yount* for respondent.

BROWN, C.—This suit was instituted before a justice of the peace in Carter County, to recover double damages from the defendant for the death of plaintiff's cow, which occurred in said county in the manner and under the circumstances we will presently state. The value of the cow was charged in the statement to be $75, and there was a verdict for that amount which was doubled by the justice in accordance with the provision of Section 3145, Revised Statutes 1909. From this an appeal was taken to the Carter Circuit Court, where the plaintiff was permitted, against the objection and exception of the defendant, to amend his statement by striking out the prayer for double damages. The cause was tried in the circuit court upon an agreed statement of facts as follows:

"It is stipulated and agreed that plaintiff was on the date alleged the owner of the animal sued for; and that it was of the value of $60, and said animal was killed by reason of eating too much sorghum cane, then growing in a field belonging to one Earnest Szymarek.

"That said animal was running at large outside of any enclosure, and got into said field by going through or over the right of way fence between said railway and said field. That at the point where said animal came onto the track the railroad tracks were not enclosed with any fence at all; and at the point where said animal entered said field there was a fence on the east side of the said right of way, and the fence on the west side, dividing the right of way from the said field of Szymarek, was out of repair and not sufficient to turn stock and did not prevent this cow from getting into said field.

"That the railroad alongside of said field was at the time of said killing being operated by said defendant.

"Plaintiff claims that upon these facts the defendant is liable under Section 3145, Revised Statutes 1909, for double the value of said cow. The defendant claims that said section as properly construed does not apply

to said facts; and if so construed that said section is in violation of Section 1, Article 14, of the Federal Constitution, and Sections 20 and 30 of Article 2 of the Constitution of Missouri, and void.''

The trial was before the judge without a jury, and resulted in a verdict and judgment for said sum of $60, and the case was regularly brought to the Springfield Court of Appeals by appeal, and has been transferred to this court upon a division of opinion of the said court of appeals, because it was thought by the judges to conflict with the cases of Eaton v. Railway, 209 S W. 974, and McCaskey v. Railroad, 174 Mo. App. 724.

I. We hardly appreciate the defendant's objection to the allowance, in the circuit court, of the amendment to the statement of the plaintiff's cause of action upon which the suit was instituted in the justice court. Section 7587, Revised Statutes 1909, expressly provides that the statement of the plaintiff's cause of action may be amended upon appeal when, by such amendment, substantial justice will be promoted. This broad liberty of reformation is only limited by the qualification that ''no new item or cause of action not embraced in or intended to be included in the original count or statement, shall be added by such amendment.'' Whether we consider the cause of action to be the wrong out of which the liability is alleged to have grown, or the liability itself, this amendment comes within the statutory permission. It is asserted in argument by both parties alike, that the wrong consisted of the failure of the defendant to fence its right of way as commanded by Section 3145 of the same statute, and the liability is the damage charged to have resulted from the neglect of that duty. It is true that the relief asked in the original statement included the doubling of such damage, but there is nothing in the section quoted which excepts the waiver of this penalty from the general right of amendment which it confers. The defendant in its brief admits that the change was harmless, evi-

*Amending Complaint.*

dently meaning that the real question to be considered is whether Section 3145 applies to cases of this character. If so, the amendment limiting the recovery to actual damages constitutes no error against the defendant. If not, the amendment was harmless.

II. Coming now to the real question presented by the record, we notice that both the majority opinion of the Springfield Court of Appeals holding that the judgment below should be reversed and the opinion of the dissenting judge holding that it should be affirmed, concur in the statement that the conclusion reached by the majority is in conflict with the decision of the Kansas City Court of Appeals in McCaskey v. Railroad, 174 Mo. App. 724, and Eaton v. Railway, 209 S. W. 974, decided by the St. Louis Court of Appeals.

*Fencing Against Egress.*

In the McCaskey Case, the plaintiff recovered damages for injury to a horse that had escaped from the premises of its owner into a public road and had strayed along the public road to a private road into which it turned, and, passing along it, entered upon the defendant's right of way where no fence, cattle guard or gate was maintained by defendant, and, straying along the defendant's track, fell into a trestle and was injured. It was held in an opinion by JOHNSON, J., that the defendant, having failed to perform the duty to fence its track as required by Section 3145, Revised Statutes 1909, was liable for the damage to the horse resulting from such failure; and the judgment of the circuit court so holding was affirmed. This decision was expressly placed upon the ground that it was the duty of the defendant to provide a lawful barrier to prevent the horse from straying from the public road onto its railroad. The question whether it was also its duty to provide such barrier for the purpose of preventing the horse from straying from its own right of way into a place of danger situated outside its right of way and upon the

land of another, was neither involved nor mentioned in the case.

In the Eaton Case, the plaintiff commenced his action before a justice of the peace by filing a statement to the effect that the defendant was a railroad corporation owning and operating a railroad through Randolph Township in said county, and failed to erect, keep and maintain fences along the sides of its railroad where it passed through uninclosed lands in said township, by reason of which plaintiff's mare strayed in and upon the railroad, became entangled in a trestle thereon, and was killed. There was judgment for the plaintiff in the circuit court to which the cause had been appealed, and this judgment was affirmed by the St. Louis Court of Appeals, on the same grounds upon which the Kansas City Court of Appeals placed its decision in the McCaskey Case. The court, in an opinion by REYNOLDS, J., held, in effect, that Section 3145, Revised Statutes 1909, by express provision, made it the duty of the railway company to fence its road, and that the provision of that statute penalizing the company in double damages for the killing of or injury to live stock by its agents, engines or cars, does not have the effect of confining the mandatory provision of the statute to the specific injuries so enumerated, but that it creates a general duty in the railroad company to fence its right of way wherever it passes through uninclosed lands, or inclosed fields, cultivated or uncultivated.

It will be noted that in both these cases the injury resulted from the peculiar conditions incident to the construction and operation of the railroad.

That this is the law in this State is so well established by many cases determined by this court and the courts of appeals, that it is no longer open to question. Many of these cases are cited by Judge JOHNSON in the McCaskey Case and by Judge REYNOLDS in the Eaton Case, to which we refer those who are curious to pursue the subject. None of those cases, however, touch the real

question which lies at the bottom of this case, and which may be stated as follows: Is there anything in this statute creating a duty on the part of the railroad company to the owner of stock which shall stray onto its right of way, to prevent said stock, so far as the maintenance of a lawful fence will prevent it, from leaving its right of way, and going upon the land of another where it may be injured. There can be no doubt that it owes to the proprietor adjoining its right of way the duty of maintaining such a fence and its liability to him in damages for failure to discharge that duty is conceded, but its duty to the owner of the cow which had trespassed on its premises—either to keep her safely till her owner should find her or to find her owner and deliver her back to him in safety—constitutes a different question upon which we are not enlightened by the argument.

The stipulation of facts upon which the cause was submitted is silent as to whether or not there is anything in the nature of sorghum-yielding sugar cane deleterious to cows, when eaten by them in moderation, as a food. Our only information upon that subject is the statement that the cow ate "too much." There is nothing to indicate that too much of any other green food might not have been equally fatal. The stipulation also states, in substance, that the cow was running at large upon unfenced land between which and the right of way where she entered it there was no fence, so that in going upon the right of way she was violating no right of the defendant company.

III. An interesting and perhaps novel question is thus presented, which may be stated as follows: What duty did the railroad company owe to the owner of this cow with respect to her safety after she had come upon its right of way? That it owed to the owner of the sorghum field the duty to interpose a lawful fence between its right of way and the field is evident from the

language of Section 3145. That it owed to the owner of the cow the duty to refrain from willfully injuring her is equally certain. In considering this question we shall not attempt any discussion of the question of the statutory liability for double damages arising out of the following provision of that section: "Until fences, openings, gates and farm crossings and cattle guards as aforesaid shall be made and maintained, such corporation shall be liable in double the amount of all damages which shall be done . . . by reason of any horses, cattle, mules or other animals escaping from or coming upon said lands, fields or inclosures, occasioned in either case by the failure to construct or maintain such fences or cattle guards." [Sec. 3145, R. S. 1909.] Although the cause of action in this case arises out of the failure of the defendant to fence the uninclosed lands through which the plaintiff's cow came upon the right of way or the adjoining cultivated field owned by Szymarek, or both, we have already stated, in effect, that actual damage, being a distinct element of the statutory recovery, the plaintiff had the right to waive the penalty and pursue his remedy for the compensatory portion of his statutory right. We will therefore confine ourselves to the liability of defendant, as between itself and plaintiff, for this injury. This depends upon the mind of the Legislature as shown by the terms of the act, the evil to which it was to be applied as a remedy, and the nature of the remedy provided. This last guide to the statutory construction may be summed up in a few words, so far as applicable to this case. The operation of a railroad open to the unimpeded approach of domestic animals, was properly considered as dangerous to such animals as well as to the property and persons it was designed to transport. Its right of way was necessary to its construction, maintenance and operation. It must necessarily pass through and upon lands and cultivated fields and would, necessarily, become a dangerous neighbor to those through whose fields it should pass

and to the public having the right to the use of open lands. It was designed by these laws: (1) to protect the public from injury in the use of railroad facilities for transportation of persons and property by protecting trains and their contents from the dangers incident to the presence of domestic animals upon the tracks; (2) to protect the owners of live stock from the danger of loss incident to its access to the track, and (3) to compel railroad companies to do what was considered their part in the fencing of all inclosures of which their right of way should form a portion of the boundary. These principles have been frequently stated, in one form or another, by this court (Rinehart v. K. C. Southern Ry. Co., 204 Mo. 269; Stanley v. Railroad, 84 Mo. 630; Berry v. Railroad, 65 Mo. 175; Lafferty v. Han, & St. Joseph R. R. Co., 44 Mo. 291), and have become a settled rule of construction in this State. The accomplishment of these objects will therefore be considered as having been in the mind of the Legislature in the preparation of these laws. As we have seen, the penalty denounced by this section covers the whole ground of its mandatory provisions, and it may assist us to arrive at the meaning of those provisions to follow the possible course of an imaginary cow entering upon the right of way from the uninclosed lands adjoining it. She may, as she steps across the border, and stands with all four feet upon the defendant's unfenced ground, be killed by lightning. To be sure she would have avoided the bolt had she remained on the other side of the line, but no foresight could have told her that it would not have fallen on the the other side, or that she could escape it by turning back. The injury was the result of a distinct force operating independently of the owner, either of the railroad or the cow, and not the proximate result of the failure to isolate the right of way by a fence and cattle guards. The failure of the railroad company to fence, and the presence of the cow upon its land, would have been superseded by the power that held the lightning

in its hand and distributed it at its own pleasure. The same result would follow were the cow, under the same circumstances, struck by a stray bullet from a gun held in unknown hands. The law of proximate cause, and not the law of propinquity, prevails in such cases.

If the cow, having crossed the line and entered upon the right of way, escapes the dangers we have mentioned, and, thinking of the dangers from engines, cars, trestles and cattle guards, turns and recrosses the unfenced line and again stands on the ground of strangers, sees a luscious plant, reaches down, plucks and eats it, and it proves to be a deadly poison, it does not look reasonable that this little journey onto the right of way has made the railroad company liable for the bad taste of the cow, but still the situation conforms so closely to the one we are considering that it is difficult to find the distinction. In this case the unfortunate animal, instead of bethinking of her danger, or of the luscious morsels she had left behind, passing down the right of way, sees a hole in the fence, goes through it and finds, on the lands of another, a delicious patch of sorghum, and unable to resist the temptation eats to painful repletion and dies. Her death had no connection with the operation of the railroad or the use by the company of its right of way.

We have ventured the foregoing simple illustrations because they indicate with certainty the object of the Legislature in enacting the clause of Section 3145 which we have quoted, and the consequent meaning of its words. It places upon the railroad company the burden of constructing a lawful fence along the line of its right of way where it forms a part of the boundary of any inclosed field, and makes it responsible for the construction, maintenance and sufficiency of such fence. If the inclosure be a pasture, or used for the time being for the purpose of confining stock, the damage accrues by their escape. If it be used for crops the damage ac

crues to the owner by the breaching of the enclosure by animals from the right of way, and consequent injury to or destruction of the crop. We can see nothing in the words of the law that indicates a legislative intention to place upon the company the burden of insurer of stock that escapes from its right of way, while in the enclosure of a stranger. If such a duty exists, it must, in the very nature of things, apply to stock killed by lightning or a stray bullet, as well as to such as die from surfeit of food from a neighbor's field.

This question has long been settled by this court. In Hughes v. Hannibal & St. Joseph Railroad Co., 66 Mo. 325, we held that in all respects not involving the duties of a railway company to persons and things in its keeping or control for purposes connected with the performance of its duties or endangered by the maintenance, use and occupation of its right of way for the purposes of its existence, or by the non-performance of its statutory duty as an adjoining proprietor, the railway company held its uninclosed right of way with the same rights and subject to the same immunities which pertains to the title of other uninclosed land. That case involved the liability of the company for the death of a heifer, which fell into an unprotected well which had been excavated by the railroad company on its uninclosed right of way, and afterward abandoned. This court said: "The plaintiff bases his right to recover upon the alleged negligence of defendant in failing to inclose or cover said well. No statutory liability is imposed upon the defendant for injuries like the one complained of, although occasioned by its failure to erect and maintain fences as required by the 43rd section of the law in relation to railroad companies. The liability of the defendant is, therefore, such only as is imposed by the common law. [Lafferty v. Han. & St. Jo. R. R., 44 Mo. 291; Ill. Cent. R. R. Co. v. Carraher, 47 Ill. 333.]" The judgment of the Macon Court of Common Pleas for the plaintiff was reversed without remanding the cause. The

Hughes Case does not seem to have been questioned by this court, and has been followed and approved by the courts of appeals, which have had, almost universally, jurisdiction over damage suits arising under these statutes, nor has its authority been questioned by this court. We do not think the injury complained of comes within the purview, reason or letter of the statute upon which it purports to be founded.

The majority opinion of the Court of Appeals (219 S. W. 1005) contains an elaborate discussion of this case, with citations of many authorities, and for that reason we have confined ourselves to a simple statement of the questions which seem to us to stand foremost in this inquiry, referring to the majority opinion in that court for a more elaborate examination of the questions involved.

For the reason we have stated the judgment of the Circuit Court for Carter County is reversed. *Ragland* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of BROWN, C., is hereby adopted as the opinion of the court. All of the judges concur; *Elder, J.,* in result.